# MARCH, 1930.

UNIVERSAL CARLOADING AND DISTRIBUTING COMPANY, RESPONDENT, v. SOUTH SIDE BANK, APPELLANT.

Kansas City Court of Appeals. April 7, 1930.

*Garrett & Ruark* for respondent.

*Fred A. Boxley* for appellant.

BOYER, C.—Plaintiff sued defendant to recover the total sum of $568.53 alleged to be the aggregate amount of ten checks made payable to plaintiff and which were wrongfully indorsed by plaintiff's employee and collected from the drawee banks by the defendant.

The sufficiency of the petition is questioned and for that reason it will be set out in full with the exception of the introductory paragraphs alleging corporate capacity of plaintiff and defendant. All the balance of the petition reads as follows:

"Plaintiff, for its cause of action states that one Nan Brown, at all times hereinafter mentioned, was in the employ of plaintiff in the capacity of bookkeeper and stenographer, and as such had no authority to make, sign or endorse any checks for account of plaintiff or to collect the funds due or payable thereon; that between June 20, 1927, and August 3, 1927, the said Nan Brown, without authority, knowledge or consent of plaintiff, and against its interest, endorsed the name of plaintiff and of its office manager, A. C. Sampson, on certain checks payable to plaintiff listed and described in Exhibit 'A' attached hereto, and presented said checks so endorsed by her to defendant bank for credit to her personal account and defendant bank did credit said checks, amount to five hundred sixty-eight and 53/100 ($568.53) dollars to the personal account of the said Nan Brown, which said sum has not, nor has any part thereof, been received by the plaintiff; that said sum has been paid to the defendant bank by the banks upon which said checks were drawn. Plaintiff further states that the endorsements of said checks by the said Nan Brown with the name of plaintiff and its office manager were forgeries and were made by her without any kind or character of authority from plaintiff, without warrant in law,

and without the knowledge or consent of plaintiff. Plaintiff states that it has demanded of said bank the payment of said sum so credited and paid to the said Nan Brown on forged endorsements of said checks but defendant has not paid the whole or any part thereof to plaintiff.

"WHEREFORE, Plaintiff prays judgment for the said sum of five hundred sixty-eight and 53/100 ($568.53) dollars, and its costs herein expended, with interest aat the rate of six per cent from September 20, 1927, and its costs herein expended."

Exhibit 'A' referred to is also set out in the record giving the date, name of the drawer, and the amount of each check.

The demurrer to the petition was overruled. Defendant filed answer in the nature of a general denial. A jury was waived and the case tried before the court. Upon conclusion of the evidence for plaintiff, defendant demurred thereto, was overruled, and offered no evidence. The court, on the 25th day of May, 1929, entered judgment in favor of plaintiff and against defendant in the sum of $625.36. In due time and proper manner defendant perfected its appeal, and now assigns these errors: (1) The petition fails to state facts sufficient to state a cause of action against defendant. (2) The court erred in overruling the demurrer to the evidence. (3) Under the pleadings and evidence the court erred in finding that the defendant was indebted to plaintiff in the amount of the judgment.

The evidence was brief and in substance shows the following facts. Plaintiff was conducting business at Kansas City; it had employed a dictaphone operator and stenographer by the name of Nan Brown; her duties were the writing of letters and some work as a telephone operator; that she had nothing to do with checks and money received for services rendered by the company; that she had no authority to indorse checks, and that she was not bonded. Ten separate checks payable to plaintiff showing the name of the maker, the date and the amount of each were identified and the total amount of them was $568.53. The evidence shows that plaintiff never received payment of any sum on any of these checks. All of these checks bear the following indorsement:

"Universal Carloading & Distributing Co.,

"A. C. Sampson,

"Nan Brown."

And also this indorsement:

"Pay to the order of Commerce Trust Co.

"South Side Bank."

The evidence showed that A. C. Sampson was the office manager for plaintiff; that he did not indorse or authorize indorsement of his signature on the checks; that the writing resembled that of the clerk, whose signature upon said checks was in her handwriting. The evidence further showed that the branch manager, Mr. Fraser,

and the office manager, Mr. Sampson, indorsed checks due plaintiff with an authorized rubber stamp as follows:

"Pay to the order of

"Commerce Trust Co.

"804 Kansas City, Mo. 804

"Universal Carloading & Distributing Co.

"Baldwin Universal Company."

That there was a rubber stamp of a single line bearing the name, Universal Carloading & Distributing Company, kept upon the desk of the stenographer for her use in signing receipts for mail and telegrams, and when so executing receipts she would stamp the name and write her own name under it; that the stamped indorsement upon the checks was not an authorized indorsement stamp of the company. It was admitted that all these checks were deposited in defendant bank to the credit of Nan Brown, and that the money was collected from the drawee banks by the defendant and credited to her personal account. The checks were deposited and collected in June, July, and August. It was further shown that the employee opened a small part of the mail; that she did not assist Mr. Sampson in handling checks and accounts, nor do any bookkeeping; that she had previously taken checks and before discovery had replaced the checks with cash; that it was unusual for remittances in cash to come in thru the mail; that it was first discovered early in September, 1927, that this clerk had been taking checks belonging to the company; that after the loss was discovered the employee was called in, confessed, and when asked whether she could pay it said she had nothing, and no further demand was made upon her, and there was no effort to prosecute her. The cashier, the assistant cashier, the office and branch managers of plaintiff were bonded employees, but the clerk in question was not bonded. Credit was not given to the various drawers of the checks that were introduced in evidence on the amount of their bills, but their accounts remained uncredited. It further appears that plaintiff did not maintain an account in defendant bank and was not transacting business with it; that on one occasion cash was laid on the desk of the manager with a customer's bill as though it had come in the mail which caused him to take notice of the irregularity of the proceeding and he spoke to Miss Brown about it; she explained that it came in the 11:30 mail while everybody was out to lunch; this caused comment at the time, but there was only one instance of the kind; that the one-line rubber stamp bearing the name of plaintiff was not used or authorized to be used for the purpose of indorsing checks, but was only to be used and authorized to be used for the purpose of signing for mail and telegrams. That was in substance plaintiff's evidence, and defendant introduced none.

## OPINION.

Does the petition contain sufficient facts to constitute a cause of action? It is contended by appellant that plaintiff had only two remedies, one against its customers, the drawers of the checks; the other against defendant on the ground of conversion, and that the petition is insufficient in averments to constitute such a cause of action, for the reason that it fails to allege that plaintiff was in possession, or entitled to possession, of the checks in question, and that there is no specific charge of conversion in this case.

Under the authorities in this State it is apparent that appellant is correct in its view that the petition is insufficient to state a cause of action against defendant for conversion. [Welch v. Diehl's Estate, 278 S. W. 1057, 1058, and cases cited.] It does not follow that plaintiff had no other remedy than that indicated by appellant, nor that the petition is insufficient to entitle plaintiff to recover as for money had and received. The petition is cast in a cramped frame, the averments are meager, and it may be said to be lacking in specific and definite statements of ownership on the part of the plaintiff and of obligation on the part of defendant. However, the case was tried upon the theory that plaintiff was the owner of the checks in question and was entitled to their possession and to the proceeds of their collection. The trend and course of the examination of witnesses by defendant's counsel treats the whole subject as though plaintiff were the owner of the checks and sustained a loss on account of the matters which transpired. We believe plaintiff's petition, aided by evident intendments, sufficient to support an action for money' had and received. There was no motion to make it more definite and certain. It is specifically alleged that the checks were payable to plaintiff; that plaintiff's agent, without authority, indorsed the name of plaintiff and its office manager on said checks; that said checks were deposited in defendant bank, and that credit for the amounts thereof was given to the individual depositor, and that the sum represented by all the checks had been paid to defendant bank by the banks upon which said checks were drawn; that plaintiff demanded of defendant the payment to it of the sum so credited and paid to the said Nan Brown, and the petition demanded judgment for that sum with interest. We hold the petition sufficient to charge in effect that defendant has received money belonging to plaintiff which in equity and good conscience should be delivered to plaintiff. This is the substance of all actions for money had and received. Such an action is looked upon with favor and the tendency is to widen its scope. [Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262.]

The petition was filed September 24, 1927, with a demand for the total amount of the checks together with six per cent interest. The judgment appears to be within the limit allowed and to have been permissible under the law and the facts in this case. It is un-

contradicted that there were ten checks amounting in the aggregate to $568.53, all payable to plaintiff, and that they passed into the hands of defendant with a forged indorsement of plaintiff's name thereon; that defendant collected the full amount of said checks from the drawee banks, and, gave credit for the amount of the checks to the personal account of the individual who committed the forgery. It is shown that plaintiff received no part of the money. Under such circumstances it appears to be the rule of law adopted in this State, as well as in a large number of other States (and said to be the almost universal rule) that plaintiff is entitled to recover as for money had and received.

In the case of Strong v. Missouri-Lincoln Trust Company of St. Louis, 263 S. W. 1038, it is said on page 1041 of the opinion:

"The weight of authority follows the rule of law that, when a negotiable instrument having a forged indorsement comes into the hands of a bank and is collected by it, the proceeds are held for the rightful owner of the paper and may be recovered by the owner from the bank, although the bank gave value for the paper or has paid over the proceeds to the party depositing the instrument. [Buckley v. Bank, 35 N. J. Law, 400, 10 Am. Rep. 249; Farmer v. Bank, 100 Tenn. 187, 47 S. W. 234; Knoxville Water Co. v. Bank, 123 Tenn. 364, 131 S. W. 447; Talbot v. Bank, 1 Hill (N. Y.) 295; Johnson v. Bank, 6 Hun (N. Y.) 124; Graves v. Bank, 17 N. Y. 205; Indiana National Bank v. Holtsclaw, 98 Ind. 85; Shaffer v. McKee, 19 Ohio St. 526; Cement Co. v. Bank, 61 Colo. 334, 157 Pac. 202; Van Schaak on Bank Checks, 164; Tiffany on Banks, 173-175; 2 Morse on Banks (4 Ed.), pars. 474, 476, p. 858; Ogden on Neg. Inst., par. 187; 2 Aniel on Neg. Inst., par. 1663; McGee on Banks (2 Ed.), pp. 350-356; Selover on Neg. Inst. (2 Ed.), par. 243; Schaap v. Bank, 137 Ark. 251, 208 S. W. 309.]"

To the above authorities may be added Strong v. Commonwealth Trust Company, 199 S. W. 1034; Meyer v. Rosenheim & Co., 73 S. W. 1129 (Ky. App.). Appellant contends that the above declaration of law is not supported by the weight of authority and is contrary to the holding in Biscuit Co. v. Grocer Co., 143 Mo. App. 300; Grocer Co., v. Bank, 71 Mo. App. 132, and State ex rel. v. Globe Indemnity Co., 9 S. W. (2d) 668. We see no real conflict in the rule of decision announced in the respective cases. The case with which we are dealing calls only for the rule applicable to the wrong of an intervening bank. The rights and remedies existing between the payee of a check and the drawee bank are not involved. If plaintiff in this case had sued the drawee banks *ex contractu* the cases relied upon would be pertinent. We see nothing in them to militate against the rule permitting recovery from an intervening bank receiving funds in the manner shown in this case. The reason for the rule permitting recovery in given in a number of cases as resting upon

ratification by the payee of the collection of the check. It is said that the owner thereby releases the maker of the check and the drawee bank. We take it that the ratification referred to does not mean a ratification *in toto,* but only a ratification *pro tanto* as may be sufficient and necessary to release the drawer of the check and the drawee bank by an affirmance of the payment made by them. Such ratification and affirmance is no aid to a wrongful intervenor. This reason appears to have weight and wide recognition, but in our judgment can well be supplemented by another of equal or greater force, to-wit: the breach of duty which the intervening bank owes to the owner of the check to ascertain the verity of the indorsement. Defendant bank in this case had first contact with the forger and false holder. Checks payable to plaintiff were presented for collection and deposited in the personal account of the forger. There is no evidence of any effort or inquiry of any character to verify the indorsements and ascertain the interest, if any, of the named payee. Apparently no action was taken to learn why a clerk was supplying her personal account by the deposit of checks payable to her employer. This was at least an unusual proceeding. To the reasonably alert, suspicion would have been engendered. Defendant failed to take any notice of it. Inaction in such a situation is inexcusable. It was the duty of the bank to see that the proceeds of the checks reached the true owner. The neglect of the bank was the proximate cause of plaintiff's loss.

These principles find support in the case of Kansas City Casualty Co. v. Wesport Bank, 191 Mo. App. 287, cited by appellant. The Missouri cases relied upon are there reviewed, and their holding that the payee of a check cannot maintain his action *ex contractu* against the drawee bank is affirmed. Recovery was permitted for conversion against an intervening, and what was said to be an intermeddling, bank. It was there also urged by appellant as in the instant case, that inasmuch as the owner of the check may still recover from the maker of the check that the owner would not be harmed by a denial of a right to hold the intervening bank, and the court said:

"But that plea will not excuse defendant's wrongful act. The Grocer Company had a choice of remedies, one of them being for the wrong done by defendant. The suggestion is well disposed of in Solomon v. Bank, 59 N. Y. Supp. 407, in these words: 'A person or corporation who converts a promissory note or check to his or its own use is liable in damages for the conversion in an amount equal to the amount due on the promissory note or check.' "

It was also sought, as here, to inject the question of estoppel as against the payee of the check on the ground that the payee knew or should have known that its agent was endorsing its checks. The court said:

"We think it does not follow. It was defendant's duty for its own protection to have ascertained from the Grocery Company whether Bell had authority to endorse its checks. Such authority is an extraordinary power. Checks are negotiable instruments and authority to endorse the payee's name lays the way open for the endorsee to hold the payee liable on the endorsement."

We think likewise in this case that it was the duty of defendant to ascertain at its peril, when it received and collected the checks in question, that the indorsement upon the checks purporting to be that of the owner was a genuine indorsement. If it collected plaintiff's checks by reason of forged indorsements it is the same as though it had collected them without any indorsement, and the money received upon them properly belongs to the owner of the checks.

Appellant further contends in its argument that plaintiff had notice of suspicious circumstances in the conduct of its agent prior to the forgeries, and under the circumstances it failed to use proper diligence for its own protection. The evidence upon this subject was that on one occasion money with a customer's bill was placed upon the manager's desk and upon inquiry he was informed by the agent that it came in the mail. This was unusual and caused some comment. The inference drawn is that the agent had previously cashed a check and had replaced the amount to pay the bill for which the check was drawn. There was no evidence that this had in fact occurred to the knowledge of plaintiff at the time in question; and there was no notice of a nature sufficient to bar plaintiff's right of recovery. It is also said that plaintiff failed to make a demand upon its agent for a return of the money. We think that a fair interpretation of the evidence shows to the contrary. She was asked whether or not she could pay it, she said she had nothing, so no further demand was made. In any event, we do not see how a failure to demand the money from the defaulting agent would prevent a recovery from a person who is liable to account for it. We also deem it immaterial to this action that plaintiff did not credit its customers' accounts with the amounts of the checks. In the eye of the law plaintiff has ratified the payment of the checks and cannot demand a second payment of them. Appellant says that under equitable principles governing an action for money had and received that the above recited facts are of sufficient bearing to bar a recovery. Equitable principles do apply to an action of this character, but we fail to see where plaintiff has failed or refused to do equity or should be estopped upon such ground. Furthermore, the equities of this case as we view it are on the side of the plaintiff, and plaintiff may well be entitled to recover upon the equitable ground of the existence of a constructive trust. To quote from the case of Clifford Banking Co. v. Donovan Commission Co., supra, l. c. 289:

''On principle there is no reason apparent to us why a constructive trust in favor of respondent does not exist in this case under the rule announced by Mr. Perry (1 Perry on Trusts (5 Ed.), sec. 211), as follows: 'So property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded, though the person receiving the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured.' ''

We arrive at the conclusion that the petition is sufficient to support a judgment on the theory of money had and received; that the demurrer to the evidence was properly overruled; and that the judgment should be affirmed. The Commissioner so recommends. *Barnett, C.*, concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.*, absent.