NATIONAL SURETY COMPANY, in liquidation, by LOUIS H. PINK, Superintendent of Insurance of the State of New York, and Statutory Liquidator, Appellant, v. COLUMBIA NATIONAL BANK OF KANSAS CITY, a Corporation.—153 S. W. (2d) 364.

Division One, July 21, 1941.

*Henry L. Jost* and *Henry L. Jost, Jr.*, for National Surety Company.

228

230

*Paul R. Stinson* and *Dick H. Woods* for respondent; *Ryland, Stinson, Mag & Thomson* of counsel.

DALTON, C.—Action in equity to recover $7,747.08, together with interest and costs. The trial court found for defendant and plaintiff appealed. We have jurisdiction by reason of the amount sued for.

Plaintiff (appellant) is a commercial surety company and as such contracted with Henry L. Doherty and Company (by issuance of broker's and banker's blanket bonds) and insured the fidelity and personal honesty of George S. Beedle, Jr., Doherty and Company's disbursement clerk and employee at its Kansas City branch office. Doherty and Company carried an account in excess of $7,747.08 with the Fidelity National Bank and Trust Company of Kansas City, a

national banking corporation (hereinafter referred to as Trust Company), in the name of "S. B. Irelan, Agent, Special Account." S. B. Irelan was manager of the Western Division and in charge of the Kansas City office of Doherty and Company. Beedle was a supervisor in control of the issuance of checks on this account and was in charge of the check register. He was authorized to prepare and sign checks and to keep records of disbursements. He was charged with the custody of the account, the making of deposits and the reconciliation of the monthly statements. The Trust Company, however, was not authorized to pay checks, against the account, unless two signatures appeared thereon. Those so authorized to sign were Beedle, S. B. Irelan, Carl E. Drath and L. B. Lain.

In the transaction of company business, employees of Doherty and Company would draw up "requests for checks," stating the amount to be paid out, to whom payable, and the occasion for the disbursement. These "requests" would then come to Beedle, whose duty it was to investigate them and ascertain that they represented proper items for disbursement. Upon Beedle's approval of the requests, checks were typed by a stenographer and returned to Beedle. He would usually sign first, and then take the checks to one of the other authorized officials for counter-signature. The checks would then be delivered to the mailing department, to be mailed or distributed.

In 1929, 1930 and 1931, Doherty and Company was selling to the public a large amount of common stock of its affiliate, Cities Service Company. The Kansas City branch of Doherty and Company was a large district office and, in connection with and in the course of that business, issued a large number of checks, including interest checks, to those who had either bought or sold Cities Service stock. Doherty and Company had 50 to 150 employees, the volume of business ranged from one to fifteen million dollars per month, with from 10 to 80 thousand installment accounts, and from 50 to 500 checks might be issued in a day. Ordinarily the checks would be signed by the disbursement clerk and the manager, but, always, two signatures were required. The checks ordinarily would be accompanied by other papers connected with the transaction. These papers would be examined before the second signature was added, but, on account of the volume of business, sometimes the second signature was added with little or no examination or investigation.

In the period between October 30, 1929 and the date of his discharge on December 7, 1931, Beedle drew numerous checks to the order of James J. Jefferies, Marjorie Jefferies, Anna Jefferies, and one to Elizabeth Murray. With the exception of Elizabeth Murray, the payees were fictitious persons and Doherty and Company was in no way indebted to the alleged parties. Although Elizabeth Murray was an actual person, Beedle never intended for her to take any interest whatsoever in the check to her and Doherty and Company

was not indebted to her. Her endorsement on the check was secured by a confederate, who delivered the check to Beedle. All checks were drawn on the S. B. Irelan, Agent, Special Account, with said Trust Company. After signing each of these checks himself on behalf of Doherty and Company, Beedle procured the signature of one of the other officers, who was authorized to sign for Doherty and Company. Thereafter, Beedle secured possession of the checks and himself endorsed the name of the fictitious payees, and where the payees were other than James J. Jefferies, he also endorsed the checks in the name of James J. Jefferies, and delivered the checks to the defendant bank, for deposit in an account Beedle carried in defendant bank in the name of James J. Jefferies. The checks were then endorsed by the defendant bank, cleared through the Kansas City Clearing House, and ultimately paid by the drawee bank, the Trust Company. The paid and cancelled checks were thereafter delivered to Doherty and Company. In the usual course of Doherty and Company's business, after payment and cancellation of these checks by the Trust Company, they, with other cancelled checks, came into the hands of Beedle in the regular discharge of his duties, and they were taken out by him and hidden. There was evidence that, in the ordinary and usual course of business, it was not a part of Beedle's duties to deliver checks or have them in possession after they were signed, that is, until after they were paid and cancelled by the drawee bank. There was evidence, however, that upon special request, he might easily have secured them for delivery.

After Doherty and Company's auditor discovered the shortage in its "S. B. Irelan, Agent, Special Account," Beedle confessed and produced the 14 checks totaling $7,747.08. Doherty and Company then made demand upon the plaintiff Surety Company on account of Beedle's fraud. On April 26, 1932, plaintiff paid an amount equal to the loss sustained by Doherty and Company. Thereafter, on July 15, 1935, plaintiff in accordance with the terms of its bonds took an assignment from Doherty and Company of the latter's claims against the Trust Company, and others, "based on or arising out of or in connection with the aforementioned checks." Thereafter, and on February 24, 1937, plaintiff filed this suit against the defendant bank. Other facts will be stated in the course of the opinion.

One of the defenses pleaded is the five-year Statute of Limitations, to-wit, Sec. 1014, R. S. 1939, Mo. Stat. Ann., sec. 862, p. 1143, which provides that "all actions upon contracts, obligations or liabilities, express or implied, except those mentioned in Sec. 1013," shall be commenced within five years. Appellant insists that Sec. 1013, R. S. 1939, Mo. Stat. Ann., sec. 861, p. 1139, applies. This section provides, among other things, that "an action upon any writing, whether sealed or unsealed, for the payment of money or property, . . .

(and) actions for relief, not herein otherwise provided for," shall be commenced within ten years.

Appellant says: "This action is one based, and to recover, on the endorsements of fourteen checks emanating in the Kansas City Office of Henry L. Doherty and Company and endorsed and cashed by the defendant;" that the "action being upon the written endorsements of defendant bank on the checks in question, and its written promise to pay money, under the Missouri statutes . . . (R. S. Mo., sec. 3081) is therefore not barred for ten years following the accrual of such liability of the defendant bank on its endorsements, and accordingly this action was timely brought." Section 3081, R. S. 1939, Mo. Stat. Ann., p. 688, sec. 2694, begins: "Every endorser who endorses without qualification warrants *to all subsequent holders in due course.* . . ." (Italics ours.) Appellant further states: "It is difficult to readily see why this special defense is urged. If defendant is liable at all, it is on its written endorsements of the checks which it received on bogus endorsements of its customer and depositor, James J. Jefferies, and its contractual obligations inhering in its said endorsements, and a part thereof *imposed by the statute, to repay to Doherty* the money which it received on and from such checks by reason of said endorsements, if and when it turned out that they were not genuine and the defendant had acquired no title thereto (Sections 2693 and 2694, R. S. Mo. 1929, and Sections 3080 and 3081, R. S. Mo. 1939). The ten-year statute (R. S. Mo. 1929, sec. 861, R. S. Mo. 1939, sec. 1013) is the applicable statute to the liability incurred by the defendant on its said written endorsements." (Italics ours.)

In view of these contentions, we must look to the petition. The petition is one count and seeks the recovery of a lump sum, to-wit, $7,747.08, being the total amount of the fourteen checks listed in the one count of the petition. The petition alleged the facts with reference to the fraudulent issuance of said fourteen checks, as herein set out, and then alleges: "and said defendant Columbia National Bank did then and there, as it received said checks from the said George S. Beedle, Jr., endorse the same in writing, on the back or reverse side of each and all of said checks, and did agree and promise to be responsible therefor, and did guarantee and warrant the genuineness and validity of said checks, and of the prior endorsements thereon, and each and all of them, and did take and present said checks, and each and all of them, and deliver the same to Fidelity National Bank and Trust Company, and thus and thereby did procure the cash therefor in each and every instance to the full amount of each (and) every (one) of said checks from Fidelity National Bank and Trust Company, and did allow and cause Fidelity National Bank and Trust Company to charge said checks, and each and every one of them, to and against the credit and deposit balance of Henry L. Doherty and

Company in and with Fidelity National Bank and Trust Company standing to the credit of Henry L. Doherty and Company in the name of 'S. B. Irelan, Agent, Special Account.' . . . and plaintiff avers that by means and by use of the aforesaid checks, and each and all of them, and its written endorsements and guarantees thereon and thereof, defendant Columbia National Bank, acting in combination and in concert with Fidelity National Bank and Trust Company, did with said Fidelity National Bank and Trust Company obtain, take, keep and now has the moneys and funds of Henry L. Doherty and Company in the aggregate sum of $7,747.08, to which it had no just right and no lawful right to keep and retain, but in good conscience has been and now is obligated to deliver and pay over to Henry L. Doherty and Company, together with interest, for the improper taking and detention thereof.'' Plaintiff then alleged the payment in full of said loss by the plaintiff Surety Company and that ''by reason of said payment'' that plaintiff ''was and is subrogated and has succeeded to the legal and equitable rights and title of'' Doherty and Company *''in and to said account, deposits and credit balance* of $7,747.08 standing to the credit of said Henry L. Doherty and Company, S. B. Irelan, Agent, Special Account, and in and with said Fidelity National Bank and Trust Company.'' (Italics ours.) Plaintiff further alleged that the Surety Company procured an assignment in writing from Doherty and Company of all rights, title and interest of said Doherty and Company *in and to said account and deposit balance and credit* with said Trust Company and of all rights of action which the said Henry L. Doherty and Company had against said Trust Company and defendant bank, ''and all other persons concerned in and participating in the unlawful taking, appropriation and retention *of said money, funds and credits and deposit balances,* as aforesaid'' of Doherty and Company ''by reason and because of the use of the aforesaid checks, and each of them endorsed and guaranteed, as aforesaid by defendant.'' (Italics ours.)

██ ██ There is nothing in the petition or evidence to indicate that Doherty and Company was or could have been a holder (Sec. 3209, R. S. 1939, Mo. Stat. Ann., p. 724, sec. 2822) or a holder in due course of these checks. [Sec. 3067, R. S. 1939, Mo. Stat. Ann., p. 669, sec. 2680.] Doherty and Company was not a subsequent endorser, it did not accept the checks from defendant bank or from any prior or subsequent endorsers, in reliance on said endorsements. [Sec. 3077, R. S. 1939, Mo. Stat. Ann., p. 685, sec. 2690.] It paid out no cash or credit in reliance upon these endorsements. The checks were not dishonored, but in fact paid upon presentment to the drawee bank. The amount evidenced by the checks was deducted from the account of Doherty and Company in said drawee bank, and the paid and cancelled checks delivered to Doherty and Company. The payment of the checks as aforesaid was not disaffirmed on dis-

covery of the fraud, the drawee bank has not been required to restore to Doherty and Company's account the money paid out on these checks. No subsequent holder or endorser subsequent to defendant bank has been compelled to pay them. [Sec. 3081, R. S. 1939, Mo. Stat. Ann., p. 688, sec. 2694.] There is no suggestion in the pleadings or evidence that the drawee bank has suffered any loss or had to pay the checks from its own funds, or that plaintiff is subrogated to the rights of the drawee bank on the endorsements on these checks.

No privity of contract is alleged or shown as between Doherty and Company and the defendant bank. The allegation is that the drawee bank in reliance upon the checks and the endorsements, including the endorsements of defendant bank, paid the checks and charged them against Doherty and Company's account, depleting the account of Doherty and Company, and that plaintiff paid the loss to Doherty and Company. There is no allegation as to the disposition of the checks after they were paid by the drawee bank. There is no allegation of any negotiation, or transfer of the checks to Doherty and Company, but instead the evidence disclosed that the drawee bank delivered the paid and cancelled checks to Doherty and Company, the checks being the evidence of the orders of Doherty and Company and the basis upon which Doherty and Company's account in the drawee bank had been depleted and diminished. The evidence further shows that these cancelled checks, after they came into possession of Doherty and Company were thereafter delivered to plaintiff, but even such facts are not alleged in the petition. There is no allegation in the petition that the checks themselves ever came into the possession of either Doherty and Company or plaintiff. The petition on the other hand does allege the assignment by Doherty and Company of its rights ''in and to said account and deposit balance'' and of all rights against the drawee bank, and all others ''by reason and because of *the use of* the aforesaid checks, and each of them, endorsed and guaranteed, as aforesaid.'' (Italics ours.) The petition, therefore, does not purport to be a direct proceeding by plaintiff upon written instruments for the recovery of either money or property.

We think it apparent that the petition was not intended to be a suit upon the written endorsements upon each of the fourteen checks listed therein in a single count to make up the total sum sought to be recovered. The several endorsements and the said checks are not set out in or attached to the petition or considered, except as being the method used by defendant in obtaining the money and getting the Trust Company to pay the total sum to defendant and to charge the checks to Doherty and Company's account. The action is one for money had and received by defendant bank from Doherty and Company's account and is governed by the five-year Statute of Limitations. [Lively v. Tabor, 341 Mo. 352, 107 S. W. (2d) 62, 66;

Bisesi v. Farm and Home Savings & Loan Association, 231 Mo. App. 897, 78 S. W. (2d) 871, 873.] On the facts stated in the petition the obligation of defendant. to repay to Doherty and Company the money obtained by defendant on the checks was, under the facts stated, an obligation implied by law from the transaction alleged and was an obligation which would arise from the proof of the extrinsic facts alleged and was barred in five years.

Appellant only contends that it stands in Doherty and Company's place and says: "Plaintiff's petition is based upon both subrogation to and the assignment of Doherty's right of action against Columbia National Bank on its endorsement of these checks and for the amount of money which defendant obtained on any because of its said endorsements;" and that "appellant's rights rest on both subrogation and assignment." Appellant says: "The prime question in the instant case is: 'Is defendant bank ▆▆▆ liable to Henry L. Doherty and Company on its written endorsements of these checks?' If it is not, then that is an end to this case."

In support of its contention that the ten-year statute applies, appellant cites Home Insurance Company v. Mercantile Trust Company, 219 Mo. App. 645, 284 S. W. 834; Herweck v. Rhodes, 327 Mo. 29, 33, 34 S. W. ·(2d) 32, 33; and Borserine v. Maryland Casualty Company, 112 Fed. (2d) 409, 416. The Home Insurance Company case, supra, was a "suit against defendants on their endorsements, in writing, on the back of a draft paid by plaintiff," and was "an action upon a writing for the payment of money and therefore within the terms of the ten-year Statute of Limitations." [284 S. W. 834, 835.]

The only statement in the Herweck case, supra, relied upon by appellant is as follows: "Our courts hold that though the language of *the writing sued on* does not contain a promise in express terms to pay the money sued for, yet if by fair implication such promise arises from the language of the writing itself, the ten-year statute applies." (Italics ours.)

The rule, however, announced by the Herweck case (327 Mo. 29, 33, 34 S. W. (2d) 32) is as follows: "For an action on a writing to recover any sum of money to come within the ten-year statute, the money sued for must be promised, either expressly or by fair implication, by the language of the writing itself. If a promise to pay the money sued for does not arise from the language of the writing itself, but the obligation or liability of defendant therefor is one implied by law from the transaction or one that arises only upon proof of extrinsic facts, then the action falls within the provisions of Section 1317 (R. S. 1919) and is barred if not commenced within five years after the cause of action accrued."

In the Borserine case, supra, the plaintiff was an insurer of a subsequent endorser of checks on which the names of the payees had

been forged. This endorser collected the checks from the drawee banks. On discovery of the forgeries, the maker of the checks demanded that the drawee banks restore the accounts depleted by payment of the checks. The drawee banks demanded of plaintiff's insured that the money paid to it on the checks be restored. The plaintiff on behalf of its insured settled with the maker of the checks and the drawee banks and then sued defendant, a prior endorser, from whom its insured had received the checks. The court said: ''The Casualty Company, as has already been pointed out, seeks to enforce the rights and remedies of its insured against Borserine under his endorsements. The endorsements were writings. The terms of the contracts of endorsement are defined by the laws of Missouri. Borserine's engagements, evidenced by his endorsements, were to pay money if the payee endorsements were not genuine. The suit by the Casualty Company was commenced within ten years. If the Merchants Bank could have maintained a suit against Borserine upon his endorsements, we think the Casualty Company could maintain such a suit. It had succeeded to the rights of its insured.'' We find nothing in the cases cited which supports appellant's contentions.

The cause of action sued on by appellant arose prior to December 7, 1931, but this suit was not instituted until February 24, 1937, and the cause is barred by the Statute of Limitations. [Section 1014, supra.]

Appellant's assignment of errors, brief and argument are based upon the theory that Doherty and Company succeeded to and had all of the rights of the drawee bank (in the event that it had had to restore Doherty and Company's accounts, depleted by the payment of these fraudulent checks); that plaintiff by reason of subrogation and assignment of the rights of Doherty and Company was entitled to, and by this action was asserting, a claim against defendant under Sections 3080 and 3081, R. S. 1939, Mo. Stat. Ann., p. 688, sec. 2694, p. 687, sec. 2693, upon defendant's endorsements; and that the suit which appellant had instituted was an action upon the written endorsements to recover the money paid out by the drawee bank by reason of such endorsements.

Appellant relies particularly on. the case of Borserine v. Maryland Casualty Company, supra. Appellant cites that case in support of ten of the twelve main heads, under points and authorities, in its brief. Appellant insists that, except as to the names of the parties, that case is exactly like this case and that the same defenses were pleaded and relied upon, including the defenses that the action was barred by the Statute of Limitations. We think the case ▆ very different upon its facts. In that case, as we have seen, the plaintiff was subrogated to the rights of an endorser who had received the checks from a prior endorser, had become a holder in due course, and had thereafter endorsed and collected the checks from the drawee

banks. When the maker of the checks discovered that the names of the payees had been forged, it called upon the drawee banks to restore its accounts and the drawee banks called upon plaintiff's insured to make good upon its endorsements. The plaintiff settled with the maker of the checks and the drawee banks and, having done so, was subrogated to the rights of its insured and brought suit on the endorsements of the defendant, who had originally received the checks and taken them on the forged endorsements of the payees and had, thereafter, negotiated them to plaintiff's insured. Other cases particularly relied upon, and cited many times under points and authorities, are First National Bank of Kansas City v. Produce Exchange Bank, 338 Mo. 91, 89 S. W. (2d) 33; Scott v. First National Bank in St. Louis, 343 Mo. 77, 119 S. W. (2d) 929; American Sash & Door Company v. Commerce Trust Company, 332 Mo. 98, 56 S. W. (2d) 1034. These cases are distinguishable upon their facts.

In view of the conclusions we have reached, it is unnecessary to consider particular assignments of error, since the essential point raised and carefully briefed under various heads, under points and authorities, is that the court erred in entering judgment for defendant. Appellant insists that plaintiff's rights are based upon subrogation and upon an assignment, and concedes that subrogation is a doctrine of equity, but contended below that the action was at law. It here contends that the trial court erred in refusing to give particular requests for the finding of particular facts and requested declarations of law. The answer of defendant was upon the theory that the action was in equity and the cause was tried by the trial court upon the theory that the cause was in equity. On that theory the trial court refused the requests for the finding of particular facts and the requests for declarations of law. The refusal of these requests, although assigned as error, is not specifically dealt with under points and authorities. The matter is unimportant here, since by stipulation it was agreed that in any event the trial should be by the court, and since there is no dispute as to the essential facts, which are decisive of the case. The issue presented here is one of law on these facts. [Lucas v. Lamb, 348 Mo. 900, 156 S. W. (2d) 634.]

The court did not err in entering judgment for defendant. The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.