**CHEMICAL WORKERS BASIC UNION, LOCAL NO. 1744, Plaintiff-Appellant,**

**v.**

**ARNOLD SAVINGS BANK, a Corporation, Defendant-Respondent.**

No. 52343.

Supreme Court of Missouri, En Banc.

Dec. 12, 1966.

Motion for Rehearing or for Directed Verdict Denied Feb. 20, 1967.

Isaac E. Young, Maplewood, for appellant.

John L. Anderson, Anderson, Anderson & Brooking, Hillsboro, for respondent.

HYDE, Judge.

Action to recover the amount paid by defendant on a check ($2517.98) payable to plaintiff on a forged or unauthorized endorsement. There was a jury verdict for defendant and plaintiff appealed to the St. Louis Court of Appeals from the judgment entered. The Court of Appeals affirmed the judgment and we transferred the case here on application of plaintiff under the provisions of Sec. 10, Art. V of the Constitution, V.A.M.S. Because of our view on a decisive issue, we do not reach issues discussed by the Court of Appeals.

The check was issued on December 20, 1955, by the General American Life Insurance Company payable to the order of Chemical Workers Basic Union Local 1744, drawn on the First National Bank of St. Louis. The check was cashed by defendant Bank on December 30, 1955, by paying the amount thereof to Morris Parker, who was at that time president of plaintiff union. The check was issued for dividends earned under a hospitalization insurance policy and had been delivered to Morris Parker. Plaintiff's petition alleged: "That said Morris Parker came into possession of the above mentioned check and instead of depositing said check into the regular funds of the union, said Morris Parker did wrongfully and intentionally forge the name of the plaintiff, who was the payee on the check and present same at the defendant for payment.

"5. The defendant bank did thereafter cash the above mentioned check containing the forged signature of the plaintiff and pay the entire proceeds to said Morris Parker and *did wrongfully and intentionally convert the proceeds of the check payable to the union and did instead pay them to Morris Parker."* (Emphasis ours.)

It was also alleged that "defendant has received the money on this forged indorsement and did in fact guarantee all prior indorsements on the check."

This action was commenced September 20, 1962, and defendant's answer alleged the action was barred by the five-year statute of limitations, Sec. 516.120 (statutory references are to RSMo and V.A.M.S.). Defendant also raised this issue by motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence. The applicability of this statute depends on what kind of action this is. Plaintiff contends it is an action upon a writing so that the ten-year statute, Sec. 516.110, would apply. Plaintiff's theory is that "the defendant was being sued on the forged endorsement of the payee and the defendant bank after cashing the check did thereafter clear the check through the St. Louis Clearing House and did in fact, guarantee all prior endorsements on the check." Defendant mainly relies on Borserine v. Maryland Casualty Co. (USCA 8th), 112 F.2d 409, and also on Home Insurance Co. v. Mercantile Trust Co., 219 Mo.App. 645, 284 S.W. 834. The fallacy of plaintiff's theory is that it is not an endorsee and there is no endorsement to it or under which it can claim any rights. It is not suing on and does not have a cause of action on an endorsement; instead it alleges a conversion of the proceeds of the check. We pointed out this distinction of the Borserine case in National Surety Co. v. Columbia National Bank of Kansas City, 348 Mo. 226, 153 S.W.2d 364, 370, saying: "In that case * * * the plaintiff was subrogated to the rights of an endorser who had received the checks from a prior endorser, had became a holder in due course, and had thereafter endorsed and collected the checks from the drawee banks. When the maker of the checks discovered that the names of the payees had been forged, it called upon the drawee banks to restore its accounts and the drawee banks called upon plaintiff's insured to make good upon its endorsements. The plaintiff settled with the maker of the checks and the drawee banks and, having done so, was subrogated to the rights of its insured and brought suit on the endorsements of the defendant, who had originally received the checks and taken them on the forged endorsements of the payees and had, thereafter, negotiated them to plaintiff's insured." See also 11 Am.Jur.2d, Bills and Notes, Secs. 611, 613, 616, 625. Thus plaintiff's action (as subrogee of an endorsee) was on the endorsement of Borserine, who had first received the check with a forged endorsement.

In the National Surety case, we held the action barred by the five-year statute of limitations. In it the plaintiff, drawer of checks, claimed its action was on endorsements of the defendant bank, which had cashed checks on bogus endorsements. As in this case, the checks were drawn on another bank and the defendant bank to collect them endorsed them and guaranteed the validity of the prior endorsements. The drawer's loss was paid by the plaintiff Surety Company which was subrogated to the drawer's rights and brought this suit. We pointed out (153 S.W.2d l. c. 368) that the drawer "was not a subsequent endorser, it did not accept the checks from defendant bank or from any prior or subsequent endorsers, in reliance on said endorsements. * * * It paid out no cash or credit in reliance upon these endorsements. The checks were not dishonored, but in fact paid upon presentment to the drawee bank. * * * No subsequent holder or endorser subsequent to defendant bank has been compelled to pay them. * * * There is no suggestion in the pleadings or evidence that the drawee bank has suffered any loss or had to pay the checks from its own funds, or that plaintiff is subrogated to the rights of the drawee bank on the endorsements on these checks." We held: "The action is one for money had and received by defendant bank from Doherty and Company's account (drawer of the checks) and is governed by the five-year statute of limitations. * * * [T]he obligation of defendant to repay to Doherty and Company the money obtained by defendant on the checks was, under the facts stated, an obligation implied by law from the transac-

tion alleged and was an obligation which would arise from the proof of the extrinsic facts alleged and was barred in five years."

In this case, plaintiff is the payee of the check and not the drawer thereof nor a subrogee of anyone. In the Home Insurance Co. case (284 S.W. 834) plaintiff Insurance Company brought suit against two banks "on their endorsements, in writing, on the back of a draft paid by plaintiff." The draft had been paid by the St. Louis County Bank to an insurance agent, not authorized to collect the draft, who appropriated the money to his own use. In a suit by the payees named in its draft the Insurance Company was required to pay to them the amount of the draft. The suit of the Insurance Company was against the St. Louis County Bank which had paid the amount of the draft to the unauthorized agent, on his endorsement, and the Mercantile Trust Company, which had received the amount of the draft from the Insurance Company's New York bank. Both of these forwarding banks had endorsed the draft guaranteeing all prior endorsements. The court held: "[T]his is an action based upon the warranty made by the indorsers of the genuineness of a previous indorsement, and is an action upon a writing for the payment of money, and therefore within the terms of the 10-year statute of limitations." We do not have the same situation here and would have it only if the drawer of the check (General American) could have been required to make good the loss to the Union and was seeking to recover on this defendant's endorsement. In such a situation, if there could be conflict between the Home Insurance Co. case, 219 Mo.App. 645, 284 S.W. 834, and National Surety Co. v. Columbia National Bank, 348 Mo. 226, 153 S.W.2d 364, the latter is the controlling authority. For other cases concerning right of drawer of check against collecting bank see Annotation, 99 A.L.R.2d 637.

■ "[T]he general rule is that a collecting bank which accepts a check on a forged indorsement acquires no title and

holds the proceeds of the check, when collected from the drawee bank, for the payee or rightful owner, who may recover from the collecting bank as for money had and received, even though it has fully paid over and accounted for the same to the forger without knowledge or suspicion of the forgery; such rule being based upon the theory of the payee's ratification of the collection of the check from the drawee. The rule applies to indorsements by a person bearing the same name as the payee, and to indorsements by the payee's agent without authority." 5B Michie on Banks and Banking 96, Sec. 278. Forged or unauthorized signatures were placed on the same basis by Sec. 401.023.

It is said 6 Zollmann Banks and Banking 465, Sec. 4252, as to the rights of the payee of a check against a bank collecting from the bank on which the check was drawn: "The money collected belongs to the payee the same as if it had been collected without any indorsement. The bank acquires no title to either the check or its proceeds, but holds such check or its proceeds for the payee, who may elect to ratify the collection and hold the discounting bank in an action for money had and received, or in an action in conversion." It is also said: "The theory underlying the above rule has been expressed in various ways, all of which may be summed up in the statement that the possession of the check on the forged or unauthorized indorsement is wrongful, and when the money has been collected on the check, the bank, or other person or corporation, can be held as for money had and received and the statute of limitations governing actions on implied contracts is applicable." 10 Am.Jur.2d 600, Banks and Banking, Sec. 632; see also 10 Am.Jur.2d 596, Sec. 629; Vol. II, Paton's Digest of Legal Opinions 1840; Annotations, 31 A.L.R. 1071; 67 A.L.R. 1536; 100 A.L.R.2d 670; 9 C.J.S. 762 Banks and Banking § 357c. The action was held to be in conversion in Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo.App. 287, 177 S.W. 1092; Good Roads Machinery

Co. v. Broadway Bank, Mo.App., 267 S.W. 40; Aetna Casualty & Surety Co. v. Lindell Trust Co., Mo.App., 348 S.W.2d 558, 563; but in Universal Carloading & Distributing Co. v. South Side Bank, 224 Mo. App. 876, 27 S.W.2d 768, the action was held to be for money had and received. In all of these cases the action was against a collecting bank as here and not against the bank on which the check was drawn. "[I]t has been stated that the check owner may elect to proceed either in assumpsit for money had and received, or in trover for conversion." 100 A.L.R.2d 672. In either case, the five-year statute of limitations would apply.

 In the Kansas City Casualty case, 191 Mo.App. l. c. 289, 177 S.W. l. c. 1093, in which the action was considered to be in conversion, the court said: "But the present action is not *ex contractu;* it is *ex delicto.* Defendant bank has not contracted to pay the Inter-City Grocery Company the amount of the checks in controversy, but it has wrongfully intermeddled with them to the exclusion and in disregard of the rights of the true owners, and that is a conversion. A conversion is 'any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it.' 2 Cooley on Torts, 859." In the recent case of Brede Decorating Inc. v. Jefferson Bank & Trust Co., Mo.Sup., 345 S.W.2d 156, 164, we considered such an action a suit in conversion, saying: "[D]amages for the conversion of a promissory note, bond or other negotiable instrument is prima facie its face value." Clearly, in this case, plaintiff's action is not "upon any writing * * * for the payment of money" but for conversion and the five-year statute of limitations applies. There is no pleading or proof as to any fraud on the part of defendant which could make applicable the provisions of Sec. 516.120(5); see Obermeyer v. Kirshner, 225 Mo.App. 734, 38 S.W.2d 510, 514, and cases cited; see also cases cited West's Missouri Digest, Limitation of Actions, ⚙⇒104. Since this action was barred by the five-year statute of limitations, the court should have directed a verdict for defendant; but the correct judgment was entered on the verdict of the jury.

The judgment is affirmed.

All concur.

On Motion for Rehearing

PER CURIAM.

Plaintiff claims the opinion herein overlooked and failed to apply Sec. 516.100, RSMo V.A.M.S., the part of which claimed applicable hereto is as follows: "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment". The proviso stating this principle was added to what is now Sec. 516.100 (then Sec. 1887, R.S.1909) by amendment in 1919, Laws 1919, p. 211. Therefore, the older cases cited by plaintiff do not have much value in construing this provision. Moreover, they would be more applicable to a suit by plaintiff against its president than to this action against the bank.

It is stated, 54 C.J.S. Limitations of Actions § 174, p. 141: "Under statutes providing that in personal actions the cause of action shall not be deemed to accrue when the wrong occurs or the technical breach of duty occurs, but when the damage resulting therefrom is sustained and capable of ascertainment * * * it has been held that, in cases falling within the purview of the statute, if the action is of a nature to be maintained without proof of actual damage limitations will run from the time of the wrongful act, but that, when the act is not legally injurious until certain consequences occur, then the period of limitations runs from the date of consequential injury. The injurious consequences or resulting damages which bring about accrual of the cause of action are the indis-

pensable elements of the injury itself and not mere aggravating circumstances enhancing a legal injury already inflicted or the mere development of the injury, and *the resulting damage is sustained and capable of ascertainment within the contemplation of the statute whenever it is such that it can be discovered or made known."*

We said in Rippe v. Sutter, Mo.Sup., 292 S.W.2d 86, 90, that this statute *"does not change the general rule* that *'when an injury is complete as a legal injury at the time of the act, the period of limitation will at once commence.'"* (All emphasis ours.) In the Rippe case which was for damages for property taken under void judgments, we held the limitation period began on rendition of the void judgments. See also Allison v. Missouri Power & Light Co., Mo. App., 59 S.W.2d 771, 773, as to personal injury cases.

In Gruenewaelder v. Wintermann, Mo. Sup., 360 S.W.2d 678, we reaffirmed the rulings of the Rippe and Allison cases, affirming the court's action in entering a summary judgment against the plaintiff "on the theory that plaintiff's action was barred by the five-year statute of limitations". We held "that Section 516.100 RSMo 1959, V.A.M.S. cannot aid the appellant under the undisputed facts of this case, because of an applicable rule of law well stated in Rippe v. Sutter, supra". In the Gruenewaelder case, the plaintiff alleged a conspiracy to defraud her of certain mining property, in another state, seeking both actual and punitive damages. The property was lost by foreclosure of a mortgage within the five-year limitation period. However, plaintiff's action was based on fraud in obtaining the mortgage and we held plaintiff had knowledge of the alleged fraud more than five years before and did not bring suit to rescind. Thus the damage was sustained and capable of ascertainment when the mortgage was executed rather than when it was foreclosed.

An early case considering the 1919 amendment to Sec. 516.100 is Dennig v. Meck-

fessel, 303 Mo. 525, 261 S.W. 55, 57, which was an action for contribution among co-guarantors after payment of common obligations. It was contended the action did not accrue until liquidation of the company whose obligations were paid, because this would reduce the amount of the obligations guaranteed. The court held "plaintiffs were entitled to contribution the moment they paid the common obligations." By way of dictum, since the court held the actions barred before the effective date of the 1919 amendment, the court said: "[I]f this proviso were applicable, it is plain that by its terms the causes of action accrued when the obligations were paid, as the liability of each guarantor was then capable of ascertainment." What is meant by "capable of ascertainment" is also illustrated by Lewis v. Thompson, 231 Mo.App. 321, 96 S.W.2d 938. The issue was whether the cause of action for services in the sale of lumber yards accrued on March 23, 1927, when the contract of sale was entered into or on April 2, 1927, when the inventories of the merchandise, lumber and other materials were completed. Since plaintiff's compensation was claimed on the basis of a percentage of the sale price, it was held that the compensation was capable of ascertainment only after inventories were completed, so that statute of limitations did not begin to run until after that date.

In construing this statute we must consider that it does not say accrual of a cause of action is postponed until discovery of a wrongful act but only says accrual is postponed until the damage resulting from a wrongful act "is sustained and is capable of ascertainment." In short, the statute begins to run when the damage is sustained and is capable of ascertainment. The failure to discover the wrongful act does not prevent the accrual of the action after the damage is sustained and is capable of ascertainment, unless, of course, the discovery is prevented by fraud or deception. Sec. 516.120(5). Even under that provision: "A general charge of ignorance at

one time and of subsequent knowledge at another, as well as mere silence, is insufficient to toll the statute." Brown v. Irving-Pitt Mfg. Co., 316 Mo. 1023, 292 S.W. 1023, 1025. We further held in that case: "When discovery is relied upon to toll the statute, the pleading should aver when it was made, what it was, how it was made, and why it was not made sooner." See also Hays v. Smith, Mo.Sup., 213 S.W. 451, 456, citing cases holding "mere silence of the debtor will not excuse the creditor's failure to discover the fraud"; likewise Clapp v. Leavens, 8 Cir., 164 F. 318, 321, saying "mere ignorance of the plaintiff of his cause of action will not prevent the running of the statute." We, therefore, hold the general rule must be applied as thus stated in Hunter v. Hunter, Mo.Sup., 237 S.W.2d 100, 103: "A cause of action accrues, and limitations thereon begin to run, when the right to sue arises."

 In this case, the injury to plaintiff was complete as a legal injury at the time defendant cashed the check for plaintiff's president on his unauthorized endorsement. The damage was then sustained and upon any inquiry it soon could have been discovered and made known. Since the amount of damage was the amount of the check, it was then *capable of ascertainment* within the contemplation of Sec. 516.100. Certainly with reasonable diligence on the part of plaintiff's officers, they could have discovered this unauthorized act of their president well within the period of limitations. Plaintiff's officers knew they had a participating policy with General American from which they could expect annual dividends; but they did nothing to find out when or what dividends were paid or who received the dividend checks. Apparently they let their president receive and cash these dividend checks for several years without making any inquiry to the Insurance Company. Defendant Bank did nothing but cash this check and in no way concealed the transaction from anyone. In any event, it was submitted to the jury by Instruction D-4 to

find in favor of defendant "if plaintiff had the means of discovering in its power or by the exercise of reasonable diligence could have discovered same" (payment of $2517.68 to Morris Parker) "at any time prior to September 20, 1957." (Suit was commenced September 20, 1962.) The jury found for defendant on this submission. Our conclusion is that Sec. 516.100 does not help plaintiff.

The motion for rehearing is overruled.