ST. LOUIS ASSOCIATES, L.P., Plaintiff/Respondent/Cross-Appellant,

v.

GANNON MANAGEMENT COMPANY, Defendant/Appellant/Cross-Respondent.

Nos. 70589, 70654.

Missouri Court of Appeals, Eastern District, Division Three.

June 27, 1997.

Joe D. Jacobson, Green Shaaf & Margo, P.C., Clayton, for appellant.

Leonard Komen, Clayton, F. Guthrie Castle, Jr., Memphis, for respondent.

GRIMM, Judge.

Plaintiff contracted with defendant for defendant to manage five apartment complexes plaintiff owned. A dispute arose over $34,000 defendant paid William E. Franke in August 1991. In addition, the parties dispute an additional $45,942.47 paid him in March 1990.

Both parties filed summary judgment motions. The trial court found defendant breached its agreement with plaintiff and violated its fiduciary duties. It awarded plaintiff $34,000. However, on the other claim, the trial court found plaintiff was barred by the statute of limitations. Both parties appealed.

Defendant alleges the trial court erred because the management agreement authorized the payment to Franke. We disagree and affirm that portion of the judgment.

Plaintiff alleges the trial court erred in holding the statute of limitations barred its $45,942.27 claim. We agree; the claim was not barred because defendant did not disclose the payment and plaintiff did not discover it until a time within the statutory time period.

## I. Background

Before May 31, 1984, Franke owned five apartment complexes. These apartments were managed by defendant; Franke is its president.

On May 31, 1984, Franke sold these complexes to plaintiff. Plaintiff executed a $57,-300,000 "Wrap Note" payable to Franke. Under this wrap note, plaintiff assumed the first mortgage on the properties and gave Franke a second mortgage to secure the additional amount due him. In addition, plaintiff, in effect, hired defendant to manage these complexes.

Plaintiff's monthly payments on this wrap note were paid to Franke. He, in turn, used a portion of the payment to pay the first mortgage holder and paid the balance to himself.

As of January 1, 1986, the parties executed a new management agreement to serve as the contract governing their relationship. This agreement gave defendant, among other things, authority to pay plaintiff's "mortgage indebtedness" from plaintiff's funds.

As of November 18, 1988, the 1984 wrap note was modified. These modifications occurred because plaintiff refinanced the debt. Plaintiff paid Franke a portion of the money owed him. In exchange, Franke released his mortgage. Further, any future payments to Franke were subject to numerous conditions.

As part of the refinancing, between November 1988 and January 1989, plaintiff sold the five apartment complexes to five newly created partnerships. On January 27, 1989, Franke released his second mortgage.

On March 7, 1990, defendant paid Franke $45,942.27 from defendant's account. Defendant did not give direct notice to plaintiff that this amount was paid.

On August 7, 1991, defendant wrote plaintiff and advised it that defendant was disbursing $34,000 from its account to Franke. In the letter, defendant said the payment was for interest due Franke. Plaintiff received the letter on August 12. It immediately faxed a letter to defendant stating that the money was not available for payment on debt and declined to give authorization for the payment.

Thereafter, plaintiff filed this suit, claiming defendant misappropriated plaintiff's funds by paying Franke the $34,000. Later, plaintiff amended its petition to include the $45,-942.27 payment. As previously indicated, both parties filed summary judgment mo-

tions. The trial court awarded plaintiff $34,-000, but denied the $45,942.27 payment on the basis that the statute of limitations had run. These appeals followed.

## II. Defendant's Appeal

■ In its first point, defendant alleges the trial court erred in granting plaintiff summary judgment for $34,000. It contends "that the [management] agreement specifically provided that [defendant] was authorized to pay [plaintiff's] mortgage indebtedness from [plaintiff's] funds."

Defendant argues that it did not breach the contract. It asserts that the management agreement authorized defendant "to pay mortgage indebtedness ... from [plaintiff's] funds." Defendant does not assert any other justification for the payment.

At the time the management agreement was entered into in 1986, plaintiff owed Franke money which was secured by a second mortgage. Thus, at that time, defendant could make payments to Franke on his mortgage indebtedness.

However, when refinancing occurred in late 1988 and early 1989, Franke released his second mortgage. Thus, by this release, Franke no longer had a mortgage. Because he did not have a mortgage, no mortgage indebtedness existed in his favor. Therefore, defendant's authority under the management agreement to pay "mortgage indebtedness" did not apply to the 1991 $34,000 payment to Franke. Point denied.

We need not address defendant's second point. It contends there can be no breach of fiduciary duty when the management agreement authorized the payment of mortgage indebtedness. Because the management agreement did not authorize this payment, defendant's second point is denied.

## III. Plaintiff's Appeal

■ In plaintiff's first point, it alleges the trial court erred in granting defendant's summary judgment motion concerning the 1990 payment of $45,942.27 to Franke. It contends the five year statute of limitations did

not bar its action because defendant did not timely disclose the payment and its petition was filed within the five year limitation period.

Plaintiff contends it first learned of this payment in 1995. In March 1995, a bankruptcy attorney for the five partnerships which purchased the complexes in 1988–1989 conducted discovery proceedings. At that time, he received a dozen file boxes of documents.

On April 14, 1995, the bankruptcy attorney discovered a photocopy of a March 6, 1990 $77,395.05 check from the St. Louis County Collector of Revenue. Attached to it was a breakdown of its distribution, which indicated a portion went to the attorney securing the refund and the balance of $45,942.27 paid to defendant. Defendant acknowledges that it immediately paid $45,942.27 to Franke.

Upon discovering this document, the bankruptcy attorney notified plaintiff's president. On May 17, 1995, plaintiff sought and obtained leave to amend its petition to include this claim.

On the other hand, defendant contends it disclosed this payment to plaintiff's accountants in connection with the preparation of plaintiff's 1990 tax returns. Defendant's treasurer's affidavit states that he disclosed this information on August 19, 1991. At that time, he sent a trial balance and general ledger information. That information contained the entry, "Wrap Int P Mt to WEF 3/7/90 Ledger 1 Genrl 03/07/90 45942.27."

Although plaintiff disputes that it hired the accountant that defendant sent the information to, for purposes of this point, we will assume that the accountant was plaintiff's agent to receive the information. Under that assumption, plaintiff first received knowledge of the check on August 19, 1991. Plaintiff filed its amended petition on May 17, 1995, well within five years of August 19, 1991.

Both parties acknowledge the applicability of the five-year statute of limitations found in section 516.120.* However, the dispute also evolves around the application of section 516.100, which provides in part:

* All statutory references are to RSMo 1994.

the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but *when the damage resulting therefrom is sustained and is capable of ascertainment,* and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained (emphasis added).

Here, under the 1986 management agreement, plaintiff employed defendant "to rent, lease, operate and manage" the five complexes. Defendant agreed to deposit all receipts. As previously stated, plaintiff authorized defendant to pay certain expenses, including "mortgage indebtedness." Moreover, the management agreement required defendant to "establish and maintain a comprehensive system of records, books and accounts."

Defendant argues that both "the fact of the loss and the amount of the loss were capable of ascertainment on the day the payment was made." It relies on *Chemical Workers Basic Union v. Arnold Sav. Bank,* 411 S.W.2d 159 (Mo.banc 1966) for support. Its reliance is misplaced.

In *Chemical Workers,* an insurance company issued a check to the plaintiff. On December 30, 1955, the plaintiff's president forged its name, cashed the check, and kept the proceeds. *Id.* at 160.

The plaintiff filed suit on September 20, 1962, more than five years after the check was cashed. *Id.* at 161. The supreme court held that the five year statute of limitations barred this action. *Id.* at 163. Further, the court held that the statute began to run on the date the payment was made. *Id.* at 164.

*Chemical Workers* is easily distinguishable. In that case, the plaintiff's officers knew they had a policy from which they could expect annual dividends. Although they knew this, they did nothing to find out when or what dividends were paid, or who received the dividend checks. *Id.* at 165. Most importantly, the supreme court observed that the defendant "did nothing but cash this check and in no way concealed the transaction from anyone." *Id.*

In the case before us, there is no evidence that plaintiff knew of the existence of either the St. Louis County Collector of Revenue's refund check or the $45,942.27 check to Franke before August 19, 1991. Moreover, defendant had an obligation under its contract with plaintiff to collect money, to make timely reports, and to disburse it only in accordance with the management agreement. Here, defendant did not report the collection of the check at least until August 19, 1991 and thus can be said to have concealed it from plaintiff.

Here, plaintiff employed defendant as a professional manager of property. As such, plaintiff did not have an "automatic, affirmative duty to double check the services provided by a professional expert." *Martin v. Crowley, Wade & Milstead, Inc.,* 702 S.W.2d 57, 58 (Mo.banc 1985).

Plaintiff, in this point, also contends that defendant's conduct constituted fraud, and therefore was not barred until actually discovered. We note that "nondisclosure equals misrepresentation" when there is a duty to speak. *State ex rel. PaineWebber v. Voorhees,* 891 S.W.2d 126, 129 (Mo.banc 1995). A duty to speak arises when "one party has superior information not reasonably available to the other." *Id.* Further, "a fiduciary relationship between the principal and agent obligates the agent to fully disclose all material facts to the principal." *McKeehan v. Wittels,* 508 S.W.2d 277, 280 (Mo.App. E.D.1974).

In view of our disposition of plaintiff's first point, we need not reach its other points concerning relation back.

The trial court erred in granting summary judgment on the $45,942.27 claim on the basis that the statute of limitations had run. Thus, we affirm the trial court's judgment on plaintiff's claim for $34,000 and reverse and remand the trial court's judgment finding the statute of limitations barred plaintiff's claim for $45,942.27.

CRAHAN, P.J., and HOFF, J., concur.