THE FIRST NATIONAL BANK OF KANSAS CITY, APPELLANT, v. PRODUCE EXCHANGE BANK OF KANSAS CITY, RESPONDENT.—59 S. W. (2d) 81.

Kansas City Court of Appeals.   April 3, 1933.

*Scarritt, Jones & North* for appellant.

*John B. Gage* for respondent.

SHAIN, P. J.—This is an action instituted in the Circuit Court of Jackson County by appellant, plaintiff below, against respondent, the defendant below, for a refund of money which appellant alleges was wrongfully received from appellant by the respondent.

This suit is in three counts, each count alleging wrongful receipt of $1,000 on three (3) specific occasions.

It appears from the evidence that in the years of 1929 and 1930 the "List & Bagwell Construction Company" and the "List & Clark Construction Company" had offices and were operating from the said offices in and around Kansas City, Missouri. It appears that

one, C. J. Brown, was the secretary and treasurer of these construction companies and that one, Ben T. Wilson, had charge of the books of said companies and was a confidential employee or office manager and handled the bank account of the aforenamed companies. It is shown by the evidence that Brown, the secretary and treasurer, signed all the checks for the companies, Wilson often filling out the checks for Brown to sign.

The evidence discloses that the two construction companies carried accounts in the First National Bank of Kansas City, appellant herein.

On September 25, 1929, Wilson went to the appellant bank and bought a cashier check, and under his direction the check was made payable to James Edgar. The consideration for this cashier check was a $1,000 check, signed by the List & Bagwell Construction Company.

On October 26, 1929, another transaction of the same kind as above was had, differing only as to the date and as to the $1,000 check, being signed by the List & Bagwell Construction Company.

On November 13, 1929, another transaction of the same kind was had, wherein the 1,000 check was signed by the List & Clark Construction Company.

It will be noted that the designated payee in each of these cashier checks was James Edgar. It appears that there was a James Edgar in the employ of the construction company. The whereabouts of said Edgar, at the time of these transactions, is not clearly shown in the evidence.

The deposition of Ben T. Wilson is in evidence. Wilson testifies, that each of the checks given in consideration for the cashier checks in issue were signed by C. J. Brown, secretary and treasurer of the construction companies.

It appears from the evidence that after these cashier checks were received by Wilson, that he, in each instance deposited the same in his credit in the Produce Exchange Bank of Kansas City, Missouri, the respondent herein, and that he, Wilson, signed the name of James Edgar in each instance.

It is shown that these cashier checks were in due course cleared through the Clearing House Association of Kansas City, Missouri, and were in due course paid by the appellant herein.

There is confusion in the evidence as to when it was discovered that Wilson had endorsed the name of James Edgar on these cashier checks, and also, some confusion as to when the appellant made a demand on the respondent for a return of the money. If it be conceded that these transactions created a legal obligation on the part of the respondent to refund to the appellant, we conclude that in the matter of discovery or demand there is nothing in the delay to preclude recovery; and we will not discuss further, the respondent's contention on that point.

There appears in the evidence, matters concerning insurance had by the appellant bank, and matters concerning reimbursement had by appellant, by way of indemnity insurance. Based upon this theory of insurance reimbursement, the respondent raises a question of appellant being an improper party to sue.

The court concludes that the matters of insurance, indemnity by way of insurance, and also the question of appellant's right to sue, is not germane to the real issue in this case.

It appears that at the close of the plaintiff's case in the trial court, that there was offered by the defendant a peremptory instruction directing a verdict for the defendant, which said instruction was given by the court. Upon this indication of the trial court, but before the judgment was rendered, appellant, plaintiff below, took a nonsuit with leave to move to set aside.

In due time the appellant filed a motion to set aside the nonsuit and for a new trial, said motion was duly taken up and considered by the court and the same was overruled.

From the ruling of the trial court, an appeal was duly taken and cause sent to this court.

Both the appellant and respondent in this case were members of the Kansas City Clearing House Association. Said association having rules and regulations, touching the matter of clearing checks and drafts of member banks. These rules and regulations, we conclude, constitute a contract between the member banks and in all matters covered by the contract, these rules and regulations become the law as between the parties concerned.

The appellant in this case, bases its allegation of right of recovery of the funds in issue, on Article XVIII and Article XIX of said clearing house rules. To the end of a clear understanding of the issue, we herein set forth the articles in question.

Article XVIII is as follows:

"When an item bears a forged endorsement or unauthorized endorsement, alleged by the payee or endorsee to have been forged or unauthorized, the member clearing same shall take it up on demand when said item is accompanied by an affidavit of the complaining payee or endorsee that said endorsement was forged or unauthorized."

Article XIX is as follows:

"*Endorsements*: In place of written endorsements on all checks sent to the Clearing House, they shall be stamped by a stamp bearing the word 'Kansas City Clearing House,' the name of the bank presenting them, and the date of the month and year on which they are cleared. The member using said stamp thereby makes itself responsible for the genuineness of all previous endorsements, and for all informalities in such endorsements, without any special endorsement for guarantee; provided, that such endorsement by stamp as aforesaid,

shall not be construed to supply, or as a guarantee for, missing endorsements.

"When the regular Clearing House stamp for endorsing, of any member, is not in a condition to be used, any other stamp endorsement bearing the name of the member and date of clearing, may be used instead, until the former can be repaired and replaced, providing the member making use of such endorsement shall give special guarantee for same."

The conclusion of this court in this case must be based upon an interpretation of the rules or contract upon which the statement of the cause of action is based. There are well defined rules by which laws and contracts are construed.

The question arises as to what is the purpose of the rules in question, or in other words, what was the intent upon which the minds of the contracting parties met.

In determining this question we must glean from all the facts and circumstances in the evidence, that may bear upon the question, we must carefully read and analyze the text of the contract and apply general rules of interpretation, and finally in interpreting, we feel that we are entitled to exercise such a decree of common horse sense as may be admissible in judicial opinion.

From a careful examination of the Clearing House rules, the court concludes that the purpose in mind is to protect the member banks from loss occasioned by defect of title or other defects, from which loss follows, that attach to the checks or drafts presented by the member bank clearing the same. The court concludes that there is no consideration expressed or implied in the rules to support a further liability than that expressed above.

We conclude from the evidence in this case, that in the whole of the transactions in evidence in this case, that there was no such defect in the title of the respondent in the cashier checks in issue, as in law, could cause a loss to appellant. The appellant issued the cashier checks for a good and sufficient consideration. There is no contention and no evidence to the effect, that the checks of the construction companies were not of the full face value of $1,000 each. When the appellant bank paid its cashier checks to the respondent bank, the debit and credit of that account balanced.

The appellant contends, that regardless of above, it is entitled to recover for the reason that Wilson forged the endorsement of Edgar's name on the cashier checks.

The court is presented with the conflicting opinion of the appellant and respondent, as to whether or not the cashier checks being, at the instance of the buyer, made to a third party, who had no interest and who the record shows, is claiming no interest in the checks, should or should not be considered as checks to bearer.

The question if further presented by the parties *pro* and *con,* as to whether or not the act of Wilson signing Edgar's name on the checks, constituted forgery in relation to the duty of the respondent to refund.

In our opinion, the determination of these questions is not absolutely necessary to the determination of the issue herein. However, as the conclusions of these matters have been under consideration of the court in reaching its general conclusions, we think it but fair to state here, that in our opinion, under the evidence, the checks to all intents and purposes were issued to a straw man, who neither had or claimed any interest and therefore, for the purposes of this case, should be treated as checks issued to bearer. In our opinion further. Wilson's signing the name of Edgar, under the facts and circumstances in evidence, does not constitute such forgery as places any liability on the respondent in this case.

The appellant, however, cites one case, American Sash & Door Co., a Corporation, v. Commerce Trust Co., a Corporation, that if not distinguished would appear in point on questions and matters discussed in the three paragraphs above. The above case was decided by this court and is reported in 25 S. W. (2d) 545. This case being in apparent conflict with the opinion Equitable Assurance Co. v. National Bank of Commerce, 181 S. W. 1175, the case was certified to the Supreme Court and was in October term, 1932, of that court determined and the judgment of this court was sustained. This case has not as yet been officially published, but this court has a copy of same before it in the consideration of the case at bar.

The above case presents an issue between a bank and a depositor. The opinion clearly defines the relationship between the banker and the depositor and clearly sets forth the law governing that relation ship.

In the opinion, we find this language, to-wit:

"The relation between the bank and the depositor is that of debtor and creditor. The bank's duty to make charges against the depositor's account only on his authentic order and genuine indorsements is absolute—contractual. It is not simply a question of using due care and of offsetting negligence against contributory negligence. To be available as a defense the negligence of the depositor must be of such nature as to interfere with the bank's performance of its contract, and in effect amount to representation operating as an estoppel."

The evidence in that case shows that the Sash & Door Corporation had many employees, that one, Tschupp was the payroll clerk and timekeeper. It is shown, that Tschupp became guilty of padding the payroll. He would make out weekly payrolls that contained the names of people who had not worked. This payroll was turned over to a bookkeeper, who verified the amount due by her own calculation from the data on the payrolls. She then made out checks to conform and these checks were sent to the secretary and treasurer, whose duty it

was to sign the payroll checks. In some way, not clearly shown in the evidence, but clearly wrongfully, Tschupp extracted the bogus checks and then indorsed the name of the person, fictitious or otherwise, who were named as payee in the checks and cashed the checks, either at the bank on which drawn or at other banks. These bogus checks were accepted and paid by the bank and charged to the deposit account of the Sash & Door Corporation.

It will be observed, that not a one of these checks was presented for payment by any person, who had lawfully received the same from the maker or had been commissioned or authorized by the maker to present. It will be further observed, that none of these checks were presented by the person to whom made payable, but that each check purported to be indorsed by the one to whom made payable.

The language used in court opinions is entitled to the same consideration in interpretation, as that of any other discourse. To understand what is meant, we must always give cognizance to the subject discussed. In court opinions, it is requisite to have in mind the issue involved.

In the Sash and Door case, there is presented a situation where loss must be sustained by one of two innocent parties. The rule, in such cases, is that the one using the least diligence must sustain the loss. Pertinent to this principle the court in the above case, in its opinion, used the language that has been used in many cases involving the issue, to-wit:

"It seems plain that only negligence which is a direct and proximate cause of the payment can be effectual in making such a defense."

In the above case, the court after defining the relation between the bank and the depositor, concludes and decides that in respect to that relationship, under the evidence presented, that the depositor has not been guilty of such negligence as will preclude the depositor from relief in a suit against the bank for money taken from the depositor's account to pay the checks in question.

In the case at bar, the relationship between the bank and the depositor is neither primarily nor secondarily involved. To be secondarily involved, there would have to be a showing that the appellant stood to lose something by reason of the transaction, wherein it issued the cashier check in consideration of a check given direct to it by the construction company. The evidence in the case at bar, is clearly to the effect that the secretary-treasurer of the construction corporation made the checks, for which the cashier checks were issued, direct to the appellant bank. There is no principle of law or equity that would place any liability on the bank to the Construction Companies, under the state of facts disclosed by the evidence of this case. The principles involved in the determination of the Sash and Door Corporation case are not presented by the pleadings or the evidence in the case at bar.

914

In our consideration of the issue presented in this case, we have had in mind the old truism of law, that law is reason and that when the reason of law ceases, the law ceases. The reason of refund based on loss of a fund, and as the evidence discloses no loss to the appellant, the reason for refund ceases.

The issue in this case, in so far as we have been able to ascertain, presents a matter of first instance in this State. Authorities are cited by counsel discussing kindred matter, but as these authorities do not go direct to the grounds upon which we base our opinion, we do not feel that it is necessary for us to discuss the same here.

In determining the issue in this case, we make an application of that fundamental principle of our system of jurisprudence, to-wit:

"The purposes of the law are to redress wrongs and preserve rights."

In the course of consideration of this case, it has been presented that under the express terms of the clearing house rule, regardless as to where the loss might finally rest, that a judgment restoring the $3,000 to the appellant should be had; that thereafter the matter of the ultimate right to the money could be adjudicated in such actions as the parties might bring. Such a procedure is untenable in that the law does not contemplate that useless things be done.

In the case at bar, the appellant neither pleads nor proves loss and the evidence clearly shows that the appellant has sustained no loss, and no fact or circumstance is shown in the whole proceeding from which it can be inferred that the appellant can sustain loss from the transactions shown by the pleadings and evidence in this case.

This case presenting all the facts necessary to a determination of all the rights of the parties touching the $3,000 in issue, we see no reason why the final determination should await the useless procedure of other actions.

We conclude, that the appellant has suffered no wrong and that the appellant presents no rights in the matter to be preserved.

Judgment of the trial court affirmed. *Bland, J.,* concurs; *Trimble, J.,* dissents in a separate opinion.

### CONCURRING OPINION.

BLAND, J.—There is no evidence as to what was the purpose of the construction companies in drawing the three checks upon which Wilson obtained the three drafts from the plaintiff made payable to James Edgar. There is no evidence tending to show that Brown and Wilson were in a conspiracy to defraud their employers. I think that the evidence fairly shows that the purpose of drawing the three checks upon the defendant bank by the construction companies, through their secretary and treasurer, Brown, was to carry out some transaction of the companies'; that Wilson was either to obtain the cash upon

these checks for his companies, or drafts made payable to other persons or concerns for the purpose of his companies' making some kind of payments to them. It cannot be inferred from the testimony that it was the intention of the companies, or Brown, that the drafts, if any, that they intended that Wilson should procure from the defendant, should be made payable to James Edgar, or a fictitious person. This is clearly shown by the testimony of Wilson in which he states that the purpose of his having the drafts drawn in favor of James Edgar, a fictitious person, was so that he could deposit them to his own credit in the defendant, bank.

So far as Wilson's fraud is concerned the transaction could have been the same as if he had procured drafts made payable to himself in his own name. No doubt, the reason he did not do this was because he thought, by procuring them made payable to James Edgar, who was an employee of one of the construction companies, that it would make it more confusing and difficult for his employers to trace and discover the fraud.

I do not think that the foregoing facts, as I have related them, are very material to a proper disposition of the case, but I recite them merely to show that the fraud committed by Wilson in each instance was complete when he presented the check of his employers to the plaintiff bank and had it issue a draft to James Edgar, a fictitious person, thus converting the funds to his own use. What Wilson did in each instance after he procured a draft made payable to James Edgar neither added to nor subtracted from the fraud that he had already committed. The case would be no different than if Wilson had procured cash upon these checks from plaintiff or had taken $3,000 in cash out of the till of his employers, and gone to another city and procured the drafts from a bank there in the name of a fictitious payee and, thereafter, indorsed the name of the fictitious payee in order to get the money upon them. If this had been the course pursued by Wilson the fraud would have been consummated at the time he procured the cash from the plaintiff bank or abstracted it from the funds on hand of his employers.

If Wilson, in exchange for the three drafts of plaintiff, had procured a draft payable to John Brown, a fictitious person, from the Produce Exchange for $3,000 or three drafts for $1,000 each, instead of depositing the three drafts in question in the Produce Exchange Bank, and had deposited the new drafts in some other bank in Kansas City, or elsewhere, signing the name of John Brown thereto, and that bank had collected the draft or drafts from the Produce Exchange Bank, it could hardly be contended that the Produce Exchange Bank could have sued that bank on the theory that the indorsement of the fictitious name of Brown by Wilson upon that or those drafts was a forgery.

The supposititious case that I have suggested would be but one

degree removed from the transaction at hand and the principles applicable are in no wise different. In other words, when Wilson caused the First National Bank to issue these drafts in the name of a fictitious person in order that he might be able to realize upon the drafts for his own benefit, the fraud was consummated and his indorsement of the fictitious name of the payee upon the drafts was no part of the fraud and was not a forgery on his part.

I am of the opinion that the drafts in question were made payable to bearer under the provisions of section 2638, providing that an instrument is payable to the bearer . . . ''(3) when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable.'' The evidence shows that the plaintiff, bank, in drawing the drafts had no intention whatever in reference to the matter as to whom the drafts were made payable. When a customer came to the plaintiff bank and wanted a draft, and paid for it, it was immaterial to the bank, according to the testimony, as to whom the draft was made payable. That was not a matter that it was interested in. It made the draft payable to the person to whom the individual buying the draft requested that it be made payable. In other words, when Wilson requested plaintiff to make these drafts payable to James Edgar, a fictitious person, the bank had no intention whatever in the matter, but was merely carrying out the directions of Wilson for whom it was acting as agent in the matter. Therefore, when plaintiff made the drafts payable to James Edgar, a fictitious person, its act was Wilson's act. It was the intention of Wilson that the drafts be made payable to a fictitious or nonexisting person and, therefore, of course, he knew that they were being made to such a person.

I think the judgment should be affirmed.

### On Motion for Rehearing.

TRIMBLE, J. (dissenting).—This is an action by one bank against another for money had and received. It is in three counts, each seeking to recover the sum of $1,000 obtained from plaintiff, The First National Bank of Kansas City, in this manner:

The List Construction Company, the List & Clark Construction Company and the List & Bagwell Construction Company were engaged in the railroad contracting business and during the years 1929-30-31, carried bank accounts in the two banks parties to this suit and in other Kansas City Banking Institutions. They were more or less affiliated under one management, C. J. Brown being the secretary-treasurer of these companies and Ben T. Wilson the ''office manager'' of all of them and preparing the vouchers and the checks on the bank accounts, which were then signed by Brown, the secretary-treasurer. The money in controversy was obtained in this wise: Wil-

son, on September 25, 1929, secured from one of said companies a check for $1,000, took it to the plaintiff bank where that company's banking business was done and had the bank to issue in exchange therefor its cashier's check for $1,000, payable to James Edgar, who was not a real but a fictitious person. The plaintiff bank however did not know this. The bank thereupon delivered the cashier's check to Wilson and he thereafter wrote the following endorsement on the back thereof: "Pay to the order of Ben Wilson, James Edgar." And underneath it he wrote the endorsement of his own name, "Ben Wilson." He then took the check, thus endorsed, to the defendant, Produce Exchange Bank, and deposited the check to his own credit. The defendant then, by endorsement and through the usual rules and procedure of the Kansas City Clearing House, of which both banks were members, received the $1,000 from the plaintiff, The First National Bank.

In the same method Wilson, on October 26, 1929, obtained another cashier's check for $1,000 from plaintiff, payable to the mythical James Edgar, but not known to be such by plaintiff bank, then after forging the fictitious name, an endorsement of James Edgar to himself and placing his own endorsement thereunder, Wilson deposited it to his own credit in the defendant Produce Exchange Bank. Said bank, thereupon, in the same way as before, endorsed the check and, through the Kansas City Clearing House, obtained $1,000 from the plaintiff. On November 13, 1929, exactly the same procedure was gone through with whereby Wilson got from the First National Bank another cashier's check for $1,000 payable to James Edgar, a fictitious person, forged that endorsement to himself, placed his own endorsement thereon and deposited it to his own credit in the defendant bank and thereafter, through the Clearing House as before, obtained $1,000 from the plaintiff bank.

Thereafter, upon its being discovered that the James Edgar endorsements were forged, the plaintiff gave written notice to defendant and demanded that it repay plaintiff the $3,000 it had received on said checks. Defendant refused and this suit was brought.

Defendant requested the trial court, at the close of plaintiff's case, to peremptorily instruct the jury to return a verdict for it, and this the court was proceeding to do over plaintiff's objections and exceptions, whereupon the latter took an involuntary nonsuit with leave to move to set the same aside. This being filed and overruled, plaintiff duly appealed.

It would seem to be manifest that under well-established general principles of law, as well as by virtue of the Clearing House Rules No. 18 and 19, which are merely declaratory of the law governing the banking transactions between the members of said Clearing House Association, that the defendant, Produce Exchange Bank, obtained from the plaintiff, The First National Bank, the $3,000 on the three checks bearing the false endorsements of James Edgar placed thereon

by Wilson for the fraudulent purpose of getting the money into his private bank account, or in other words into his own pocket, and said defendant bank thereby guaranteed to the plaintiff bank the genuineness of said endorsements on said checks. If they were false and fraudulent then the Produce Exchange Bank got no title to the checks or to the money obtained by them. Not having any right to it, the plaintiff bank can demand and enforce its return. [Real Estate, etc., Trust Co. v. United Security Trust Co., 303 Pa. 273, 154 Atl. 593; First National Bank v. Federal Reserve Bank, 88 Mont. 589, 294 Pac. 1105; Leather Manufacturers National Bank v. Merchants National Bank, 128 U. S. 26; United States v. National Exchange Bank, 214 U. S. 302; First National Bank v. United States National Bank, 197 Pac. 547; American Exchange National Bank v. Yorkville Bank, 204 N. Y. S. 621, 206 N. Y. S. 879; Seaboard National Bank v. Bank of America, 193 N. Y. 26.]

In 3 Ruling Case Law, section 244, page 616, the rule of law is stated in these words:

"Where the collecting bank endorses generally a check received by it for collection, it thereby guarantees the authenticity of the prior endorsements, and in case such a prior endorsement is a forgery, it is liable to the drawee bank for the money paid to it by the latter."

There is no question but that the foregoing is the general rule. Of course, under certain circumstances, a situation may arise where the general rule cannot operate. However, I am unable to see where, in the case at bar, there is anything to take the general rule out of its usual operation. The rule is proper and necessary in the dispatch of the commercial business of the country and of the transactions in which the party banks are engaged. It is not a matter in which equitable rights are to be considered *unless* there is something unusual or out of the ordinary, so as to make it inequitable and wrongful to enforce it. There is nothing of the kind in the transaction here involved. The danger of being called upon to guarantee the previous endorsements is a liability that inheres in the very nature of the business the parties hereto are engaged in, and, when encountered, it must be met in its entirety and full force, else business of the kind cannot be transacted satisfactorily. In the end, the proper enforcement of the rule will result in the so-called equities, if any, and the losses, being allowed to finally settle down to the places where they properly belong.

But it is urged that the payee named in these checks, James Edgar, was a fictitious person, and hence the checks were payable to bearer. I cannot agree to this. Section 2638, Revised Statutes of Missouri 1929, 1 West's Missouri Statutes Annotated, page 648, says:

"Sec. 2638. The instrument is payable to bearer . . . (3) when it is payable to the order of a fictitious or nonexisting person *and*

*such fact was known to the person making it so payable.''* (Italics mine.)

An instrument is drawn to a fictitious payee whenever the payee named has no right thereto and maker does not intend payee shall take anything thereby. [American Sash & Door Company v. Commerce Trust Co., 25 S. W. (2d) 545.] Same case decided by Supreme Court, *en banc,* No. 30,410, 56 S. W. (2d) 1034. This definition fits this case precisely. The only person who knew that the payee, James Edgar, was fictitious was Wilson who directed and caused it to be done, and he did this in order that through his false endorsement of that name he could get the money into his possession. The plaintiff was wholly unaware of this, and did only as required to do by the purchaser of the checks. Plaintiff bank was not required to know the signature of that endorsement and when they were presented for payment had a right to rely on defendant bank's guaranty of its genuineness. The checks were not payable to bearer. [First National Bank v. Northwestern National Bank, 152 Ill. 296, 310-11.] (This case at pages 306-308 is an excellent authority in support of the general rule herein considered.) On the question whether the checks were payable to bearer, it is held that they are not, in Shipman v. Bank of State of New York, 27 N. E. 371, 374; Paine v. Continental, etc., National Bank, 259 Ill. App. 526.

It is clear to my mind at least that the signing of the name James Edgar by Wilson with intent to deceive, and to put into circulation the three checks so that he could obtain the funds thereof, undoubtedly constituted forgery. [Shipman v. Northwestern National Bank, 27 N. E. 371, 1. c. 374.] Whether the endorsing of the fictitious names on the back of the checks were actually necessary to effect a transfer or not, it was deemed by Wilson to be necessary and it was indeed necessary to get the money under the checks into his account without comment or unwelcome inquiry. Our Supreme Court in State v. Andrews, 273 S. W. 726, following the statute, section 4202, Revised Statutes of Missouri 1929, 4 West's Missouri Statutes Annotated, page 2951, has announced a ruling that makes the endorsement of this fictitious name on these checks a forgery.

It is urged that plaintiff cannot recover because it has ''suffered no loss.'' It paid out its depositors' money, or money it held for its depositors, which endorsements the defendant bank, in law and by contract, guaranteed, and by reason of either one or both, it is liable. The suit is not one for damages but to recover money the defendant bank had and received, but to which it never had title and for which it gave plaintiff no consideration. The plaintiff, the moment it paid out the money on the forged endorsements had a cause of action against defendant, which arose immediately. The suit is to recover the money, and is not dependent upon whether a loss will eventually accrue to plaintiff, nor is the suit based upon the checks. [Clearfield

Bank v. Madera National Bank, 87 Pa. Superior Ct. 564.] [See also Leather Manufacturers National Bank v. Merchants National Bank, 128 U. S. 126.]

The violation by Wilson of his duty to the Construction Companies has nothing to do with plaintiff's right to recover. Plaintiff did not pay out the money on the strength of any conduct on the part of them or their employee, Wilson. It paid the checks on the faith that they were honestly and genuinely endorsed by their payee. The defendant took the checks and, after endorsing them, got the money from plaintiff under its guarantee of prior endorsements. It cannot escape liability by pointing an accusing finger at the Construction Companies for allowing Wilson to get hold of the checks. [Paine v. Continental, etc., Bank, 259 Ill. App. 526; Seaboard National Bank v. Bank of America, 193 N. Y. 26; United States Mortgage, etc., Co. v. Liberty National Bank, 184 N. Y. Supp. 32.]

The contention that plaintiff has, by delay in notice to the defendant bank of its rights, lost its right of action, cannot be maintained, for the evidence is that notice was duly given, and plaintiff bank has not done anything to defeat or destroy its cause of action or right to recover.

Nor is it a defense to say that plaintiff has been reimbursed for its loss by an insurance company insuring it in the course of its business, and that the plaintiff is no longer the real party in interest, having no pecuniary right in the matter. Plaintiff has in no way or manner assigned its cause of action, and whether its insurance company has reimbursed it or not, it still remains the real party in interest under our laws. [Foster v. Missouri P. R. Co., 143 Mo. App. 547; Sexton v. Anderson Electric Car Co., 234 S. W. 358; Keeley v. Indemnity Co. of America, 222 Mo. App. 439.]

I think the trial court erred in directing a verdict for the defendant, and that a rehearing should be granted.

I, FRANCIS H. TRIMBLE, one of the Judges of the Kansas City Court of Appeals, deem the decision in the above entitled cause (the motion for rehearing of which, filed by appellant, was overruled by the majority of the court at the March Term, April 3, 1933), to be contrary to the following previous decisions of the Supreme Court, towit: American Sash & Door Co. v. Commerce Trust Co., 56 S. W. (2d) 1034; State v. Andrews, 273 S. W. 726; City of St. Louis v. St. Louis & San Francisco Railway Co., 228 Mo. 712.

Therefore, in accordance with section 6, article 4 of the Amendment of 1884 to the Constitution of Missouri, I request that the above entitled cause be certified and transferred to the Supreme Court of Missouri.

This 5th day of April (March Term), 1933.

FRANCIS H. TRIMBLE, Judge.