**AETNA CASUALTY & SURETY COMPANY,**
a Corporation, (Plaintiff) Appellant,

v.

**LINDELL TRUST COMPANY, a**
Corporation, (Defendant)
Respondent.

No. 30558.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Sept. 5, 1961.

Coburn, Croft & Cook, Alan C. Kohn, St. Louis, for appellant.

**560**

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

RUDDY, Judge.

This action was brought in three counts by Aetna Casualty & Surety Company, a corporation (hereinafter referred to as "Aetna") against the Lindell Trust Company, a corporation (hereinafter referred to as "Trust Company"), to recover the amount which it, as insurer of an employee of International Purchasing & Engineering Company (hereinafter referred to as "International"), paid to said International under the terms of a fidelity bond, wherein Aetna insured International for any losses occasioned by unauthorized endorsements of checks payable to International. Aetna appeals from a judgment in favor of the Trust Company.

It was alleged in each count of Aetna's petition that each of the three checks involved was made payable to the "International Purchasing and Engineering Company" by the makers of said checks and that Lester F. Herman had endorsed each of said checks without authority and, subsequently, each "check was cashed by the defendant Lindell Trust Company upon the purported endorsement of the International Purchasing & Engineering Company." It was further alleged that the purported endorsement of International was wholly unauthorized and that International never received any of the proceeds of said checks.

It was further alleged in each count of said petition that the Trust Company subsequently collected the proceeds of said checks from the drawee banks and that as a result thereof said Trust Company "is indebted to the International Purchasing & Engineering Company for money had and received for the use and benefit of the International Purchasing and Engineering Company" in the aggregate sum of the three checks.

It is next alleged in each count of the petition that there was in full force and effect a fidelity bond executed by Aetna, payable to International, covering losses sustained by the unauthorized endorsement of checks payable to International by officers and employees of said International. It was further alleged in each count of said petition that by reason of the unauthorized endorsements of said checks by Herman, Aetna paid the International, under the terms of the bond, the loss represented by the total of the face amount of the checks involved and "took in exchange therefor * * * a full assignment of all rights, legal or equitable, of the International Purchasing & Engineering Company against the Lindell Trust Company and others" arising from the facts stated in the petition. In its answer the Trust Company admitted that it cashed the checks and received the proceeds of said checks from the drawee banks.

The cause was tried by the trial judge without a jury. The facts are undisputed. Only one witness testified for Aetna and no witnesses were offered by the Trust Company.

The testimony of Fred Kaiser showed that he was President of International in the year 1955 and the company at that time was engaged in the manufacture and sale of garbage disposers. Lester Herman was employed by International as a salesman. At no time during Herman's employment was he an officer of International. He was hired for the specific purpose of selling merchandise for International. It was never the duty of Herman to endorse or cash checks payable to International. He never had such authority.

International received three checks payable to its order. One check was in the amount of $455.52 and was drawn on the Bank of California by Food Service Installations of Tacoma, Washington. A second check was in the amount of $487.90 and was drawn on the Plaza Bank of St. Louis by the Missouri Pacific Employees Hospital Association. The third check was in the amount of $304.50 and was drawn

on the Northbrook Trust and Savings Bank of Northbrook, Illinois, by Browne-Haldeman Distributing Company. Herman obtained possession of these checks in some unexplained manner and endorsed each of them "International Purchasing & Engineering Co., L. F. Herman," and cashed them at the Trust Company and retained the proceeds. The Trust Company collected the proceeds from the various drawee banks. International never received any of the proceeds represented by the collection of the three checks by the Trust Company. After International learned of the cashing of the checks by Herman, it wrote a letter to the Trust Company demanding reimbursement to it of the total amount of the three checks involved. This demand was refused.

Thereafter, International made a claim against Aetna and International was paid the total of the three checks by Aetna. Following this payment an assignment was executed by International, wherein all of its right, title and interest in and to any claims and demands it may have against the Lindell Trust Company were assigned to Aetna. At the time the checks were cashed by Herman International had no account with the Trust Company.

Another company known as the Export Packing Company was in some manner associated with International. Herman did not work for this company. Kaiser admitted that Herman purchased some tires and without authority charged them to either International or the Export Packing Company. It is not clear in the record when International learned of this unauthorized act. On another occasion, prior to the time the checks in question were cashed, Herman sold a garbage disposer to a customer and received payment in cash and by check. Herman retained the cash and the check for a week before turning it over to his employer.

During 1955 Kaiser saw letters wherein Herman held himself out as vice-president of International although he was never an officer of said company. When Kaiser was asked if he knew Herman was using the title of vice-president and general manager he answered, "Not generally, no, sir." He admitted Herman had signed some letters and other correspondence as vice-president and general manager and on occasion used a card on which Herman represented himself as vice-president of the company.

■ The general rule of law applicable to the facts of this case is found in 9 C.J.S. Banks and Banking, § 254, p. 528, and is as follows:

"A bank collecting checks indorsed by an agent who has no authority to indorse checks obtains no title thereto and is liable to the true owner for the proceeds of the collection."

■ A more definitive statement of the rule as followed in some Missouri cases is found in 9 C.J.S. Banks and Banking, § 254, p. 526, as follows:

"As a general proposition, the deposit for collection of an instrument bearing a forged signature confers no rights on the bank of deposit; therefore, the person defrauded by the collection of the instrument may sue the collecting bank for the proceeds of the collection on the theory that the bank was a converter, that it received the proceeds for the use of the one entitled to the instrument, that the one paying the instrument relied on the collecting bank's warranty of prior indorsements, or that it was negligent in undertaking the collection without exercising the proper degree of diligence in ascertaining the genuineness of all signatures and the identity of its customers."

This rule of law, as thus stated, finds support in the following cases: Universal Carloading and Distributing Co. v. South Side Bank, 224 Mo.App. 876, 27 S.W.2d 768; Strong v. Missouri-Lincoln Trust Co., Mo. App., 263 S.W. 1038, and Kansas City Casualty Co. v. Wesport Ave. Bank, 191 Mo. App. 287, 177 S.W. 1092.

The rule as stated is followed in the majority of jurisdictions, though we must admit there is a lack of uniformity in the reasons given in the decisions for the enforcement of the rule.

The Trust Company contends that the trial court's judgment was correct because there was no proof that it, as a result of cashing the checks in question, was unjustly enriched. In support of its position in this respect it states that Aetna bottomed its right to recovery on the theory of money had and received and, having done so, and Aetna being a mere subrogee, it burdened itself with the duty of showing that superior equities existed in its favor. The Trust Company in support of this contention cites: United States Fidelity & Guaranty Co. v. First National Bank in Dallas, Tex. et al., 5 Cir., 172 F.2d 258; Meyers v. Bank of America, etc., Ass'n, 11 Cal.2d 92, 77 P.2d 1084; New York Title & Mfg. Co. v. First National Bank, 8 Cir., 51 F.2d 485, 487, 77 A.L.R. 1052; Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71, 72; Washington Mechanics Sav. Bk. v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827; National Sur. Corp. v. Edw. House Co., 191 Miss. 884, 4 So.2d 340, 137 A.L.R. 697; American Bonding Co. v. State Sav. Bk., 47 Mont. 332, 133 P. 367, 46 L.R.A.,N.S., 557; American Surety Co. v. Bank of California, 9 Cir., 133 F.2d 160; Bank of Fort Mill v. Lawyers Title Ins. Corp., 4 Cir., 268 F.2d 313.

The aforesaid cases in some measure do support the Trust Company's position but practically all of the cited authorities are predicated on the assumption that the Bank did not participate in a wrongful act or was not negligent in cashing the checks having a fraudulent endorsement of payee's name.

■ Where the participation of the Bank in the act of cashing the questioned checks is wrongful or negligent, recovery may be had against the Bank by the surety. Support for this may be found in one of the cases cited by the Trust Company. In American Surety Co. et al., v. Bank of California, supra, the court said:

"A surety may pursue the independent right of action of the original creditor against a third person, but it must appear that said third person participated in the wrongful act involved or that he was negligent, for the right to recover from a third person is merely conditional in contrast to the right to recover from the principal which is absolute." 133 F.2d loc. cit. 162.

We cannot agree with the Trust Company that Aetna's petition and theory of trial were limited to recovery for money had and received. It is true the petition alleges that the Trust Company collected the proceeds of the checks involved and that it was indebted to International for money had and received. Nevertheless, Aetna's petition contained all of the essential facts necessary to show a conversion. The case of Brede Decorating, Inc., v. Jefferson Bank & Trust Co., Mo., 345 S.W.2d 156, loc. cit. 164, was a suit for the conversion of sixteen checks. In discussing the essential facts necessary to show a conversion the court said:

"It is also true that a plaintiff in conversion must show possession or the right to possession * * * or an ownership which carries with it the right to immediate possession. * * * Ownership, as such, is not necessarily an issue. The fallacy in defendant's argument about 'ownership' is that we are not dealing here with the ultimate right to the money payable on the accounts for which those checks were written, or even with the right to the ultimate proceeds of the checks. We are dealing solely with a suit for the conversion of the checks, negotiable instruments payable on their very faces to plaintiff. It is presumed that the payee of a check is its owner. * * * Much of the very purpose of our Negotiable Instruments Act (Section 401.-

001 et seq., RSMo 1959, V.A.M.S.) would be perverted if we should permit a payee's ownership of the instrument to be contested by extraneous evidence of a claim to the proceeds. It is said that, ' * * * "The validity of the check, the scope of the order to pay and the person authorized by the drawer to receive payment are fixed at the inception of the instrument. * * *." Swift & Co. Inc. v. Bankers Trust Co., 280 N.Y. 135, 19 N.E.2d 992, 997.' * * * And the damages for the conversion of a promissory note, bond or other negotiable instrument is prima facie its face value."

■ There is but one form of action, § 506.040 RSMo 1959, V.A.M.S., and the plaintiff need only allege the facts upon which he seeks to recover. The technical rules formerly applicable to the common law action of trover cannot be applied to defeat an action for conversion in which plaintiff states facts which, if true, entitle him to the relief asked. Knipper v. Blumenthal, 107 Mo. 665, 18 S.W. 23. If the petition states facts from which it can be legally inferred that plaintiff had possession or right of possession at the time the property was converted, it is sufficient. Cammann v. Edwards et al., 340 Mo. 1, 100 S.W.2d 846; Battel v. Crawford, 59 Mo. 215; Henson v. Markowitz, Mo.App., 341 S.W.2d 311.

■ The form of the action will be determined from allegations of the petition and from the real nature and substance of the facts alleged in said petition and not from what the pleader may have called it. 1 C.J.S. Actions § 35, p. 1076.

■ It was alleged in Aetna's petition that the checks involved were payable to International as payee; that the checks were endorsed by Lester F. Herman without authority; that the checks were cashed by the Trust Company and the proceeds collected by it, representing the face value of the checks, had never been paid to the owner of the checks, namely, International.

We think that the aforesaid allegations were sufficient to show that International had an ownership in said checks which carried with it the right of immediate possession and that the cashing of the same on the endorsement of an unauthorized agent, with payment to him, constituted a conversion by the Trust Company. The allegation contained in the petition in the instant case, that the Trust Company was indebted to International for money had and received, was surplusage and should be treated as such.

■ The Trust Company contends that Aetna not only pleaded a case of money had and received but relied on that theory in the trial of the case. This contention is not supported by the record. The Trust Company, while stoutly contending that the theory of the trial was for money had and received, stood by without objection when counsel for Aetna stated in an opening statement to the court at the beginning of the trial that,

"This is a suit against the Lindell Trust Company in three counts to recover the proceeds of three checks which were payable to the International Purchasing and Engineering Company and which were wrongfully cashed by the Lindell Trust Company upon the unauthorized endorsement of one Lester Herman * * *.

"Our evidence will simply show that Mr. Herman had no authority whatever to cash these checks in behalf of the International Purchasing and Engineering Company and that the Lindell Trust Company wrongfully converted these checks and withheld the proceeds from the International Purchasing and Engineering Company."

After making this statement counsel for Aetna proceeded to introduce evidence to show the conversion. As we stated, there was no objection to the statement of Aetna's counsel made at the opening of the

trial, nor was there any objection to evidence that demonstrated a conversion. We think that the theory followed by Aetna in the trial court was one for conversion of the checks. However this may be, the Missouri cases have allowed recovery for conversion (Kansas City Casualty Co. v. Wesport Ave. Bank, supra), and for money had and received (Universal Carloading and Distributing Co. v. South Side Bank, supra, and Strong v. Missouri-Lincoln Trust Company, supra). In view of our later finding that the cashing of these checks constituted a wrongful act by the Trust Company, we think it makes little difference to the outcome of this case whether it be determined to be one for conversion or for money had and received. This is so, because, as we shall demonstrate, the Trust Company's equities were not superior to Aetna's.

The Trust Company cited the case of Ford-Davis Mfg. Co. v. Maggee, Mo.App., 233 S.W. 267, in support of the contention that it has not been unjustly enriched and that it was a mere innocent conduit in the transaction. In that case the secretary and treasurer of the plaintiff company obtained a cashier's check payable to the order of the plaintiff and endorsed the same as such secretary and treasurer over to the defendant and later the defendant returned same in the form of his (defendant's own) check made payable to the secretary and treasurer of the plaintiff corporation personally. The action was determined to be one for money had and received. The court held that the defendant was an innocent conduit because the secretary and treasurer of the plaintiff corporation had authority to cash and to endorse the plaintiff's checks.

This case did not involve the cashing of checks endorsed by an unauthorized person. In affirming a judgment for the defendant, the court in the aforesaid case said:

"If Oelfcken (secretary and treasurer of plaintiff company) was authorized to draw and sign checks on the company's funds, it follows that he was also authorized to indorse its name on checks payable to its order. Defendant received the check from Oelfcken and gave it back to the same person from whom he had received it without any interest in the transaction, for aught that appears, except to accommodate the doctor." 233 S.W. loc. cit. 269—Parenthesis ours.

Aetna contends the trial court erred in holding that it would be inconsistent to allow it to recover after it had paid International on its fidelity bond.

In support of the trial court's findings and judgment, the Trust Company makes the contention that Aetna's recovery in this action is precluded under the election of remedies rule. It asserts that where a party elects to pursue one of two inconsistent remedies, and receives anything of value under the claim thus asserted, the party cannot thereafter pursue the other inconsistent remedy. We do not dispute the existence or the logic of this rule. We do dispute its applicability to the facts of this case. The factual differences between the instant case and most of the cases cited and relied on by the Trust Company are readily observable. The other cases relied on by the Trust Company seem to sustain its contention. However, where the rule urged by the Trust Company was applied, those cases demonstrate that they were for money had and received and were not based on a conversion.

It is the position of the Trust Company that International, having called on Aetna to pay under its fidelity bond, has ratified the act of the Trust Company in paying to Herman the proceeds of the checks collected by it and, therefore, any action against it is inconsistent with the alleged ratification.

Kansas City Casualty Co. v. Wesport Ave. Bank, supra, is a case factually identical to the instant case. In that case the court held that the only election of remedy

existing in that factual situation was whether to sue the makers of the checks on the original debt or to treat the debt of the makers as paid and seek recovery against the person or persons who wrongfully converted the checks.

The Trust Company seemingly agrees that International could have sued it and recovered if International had made no claim against Aetna on the fidelity bond. In our opinion the fact that payment was made under the terms of the fidelity bond and an assignment was executed, can make no difference in the application of the rule urged by the Trust Company. We will demonstrate this later on in the opinion.

 That International could have sued the Trust Company and recovered is without doubt. Recoveries under such circumstances were made in the cases of Universal Carloading and Distributing Co. v. South Side Bank, supra, and Strong v. Missouri-Lincoln Trust Company, supra.

The case of Fidelity & Deposit Company of Maryland v. Fort Worth National Bank, Tex.Com.App., 65 S.W.2d 276, was one wherein the plaintiff paid to the Toledo Scale Company, under a fidelity bond, a loss sustained by the wrongful acts of an employee. As in the instant case, the employee had forged endorsements on checks that were cashed by the Fort Worth Bank. Some of the checks were drawn directly on the Fort Worth Bank and others were drawn on other banks. As to the checks drawn on other banks, the court authorized recovery by the plaintiff against the defendant, the collecting bank, thereby holding that the payment on the fidelity bond by the plaintiff did not constitute a ratification of the collecting bank's payment of the proceeds of the checks having forged endorsements to the employee who perpetrated the forgeries. It is interesting to note that in this case the court did not permit recovery against the defendant bank for the checks drawn on said bank. More about this later.

The case of Rosacker v. Commercial State Bank, 191 Minn. 553, 254 N.W. 824, 94 A.L.R. 551, was one brought by the client of an attorney against a bank which had honored a forged endorsement of the client's name on a check, wherein the client was one of the payees. The court held that the remedies followed by plaintiff were not inconsistent, even though prior to the suit against the bank the client had brought proceedings against the attorney.

Stern v. President and Directors of Manhattan Company, 134 Misc. 351, 235 N.Y.S. 634, is another case in which an employee of plaintiff wrongfully endorsed checks made payable to plaintiff and defendant as the collecting bank paid the proceeds over to the employee. Plaintiff sued the employee and recovered a judgment which was never satisfied. The court held that the recovery of the judgment against the first wrongdoer is no bar to an action against a subsequent wrongdoer unless the earlier judgment had been satisfied.

The facts in the case of First National Bank of Atlanta v. American Surety Company, 71 Ga.App. 112, 30 S.E.2d 402, differ from those of the instant case in only one respect. In that case the checks involved were drawn by the employer on its own depository, the defending bank, and were cashed by said bank on the forged endorsements of the employee. The defendant bank asserted the same contention made here by the Trust Company that the surety company was precluded from recovery under the election of remedies rule. In ruling against this contention the court said:

"We conclude and hold that the action of the telephone company in the instant case, in making demand[s] on the surety companies for the losses sustained through the forgeries of its checks, and in assigning its rights and claims in the premises to the surety companies paying the losses did not amount to an election as between inconsistent remedies which bars the

surety companies as assignees of the telephone company from proceeding against the defendant bank." 30 S.E.2d loc. cit. 409.

The Trust Company relies on two Missouri cases. The facts in each are different in material respects from those of the instant case. In the case of United States Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co., 232 Mo.App. 412, 109 S.W.2d 47, decided by the Kansas City Court of Appeals, the defending bank was the depository of the employer. It was not a collecting bank as in the instant case. The defendant bank was not charged with a conversion, but recovery was sought for money had and received. The court said:

> "When Continental (the employer) obtained full knowledge of all the facts of Chaney's (the employee) forgeries and embezzlement, * * * it had open to it two remedies. It could have demanded payment of its money from defendant on the theory that when defendant paid the checks on forged indorsements of Chaney the bank paid out its own money and not that of Continental. Since *defendant had received Continental's money on deposit* and had never been legally authorized to pay it out, it still had Continental's money and must account to Continental therefor. * * * Or it could have affirmed the act of the bank in paying out the money on a forged indorsement and, upon the theory that Chaney had its money, it could have pursued Chaney and sought and obtained the return of its money embezzled by him." 109 S.W.2d loc. cit. 49—Emphasis and Parentheses ours.

The court then held that Continental, having elected to pursue its money in the hands of Chaney by resorting to the coverage under the fidelity bond, had made an election to pursue to a successful conclusion one of two inconsistent remedies, therefore, plaintiff was estopped from asserting a claim against the defending bank.

As we have pointed out heretofore, this same court, the Kansas City Court of Appeals, in the case of Kansas City Casualty Company v. Wesport Ave. Bank, supra, wherein the facts were identical to those of the instant case, held that the only election facing the employer and the surety company was whether to sue the makers of the checks on the original debt or treat the debt of the makers as paid and seek recovery against the person or persons who wrongfully converted the. checks. In the Kansas City Casualty Company case the court permitted recovery by the surety company where the defending bank was the collecting bank, but denied recovery in the United States Fidelity & Guaranty Co. case, where the defending bank was the employer's depository, on the theory that the bank paid out of the employer's bank account the money it had received from the employer. In one case the bank was a converter of the employer's checks. In the other the bank had money of the employer on deposit which it was not authorized to pay out. In the latter case the suit was for money had and received.

The other Missouri case relied on by the Trust Company is No Dust O Co. v. Home Trust Co., Mo.App., 46 S.W.2d 203. In that case an employee wrongfully appropriated and cashed at the defendant bank five checks payable to his employer, the plaintiff. There is no discussion in the case about the election of remedies rule. The principal ground for denial of recovery to plaintiff is shown in the following statement of the court found at loc. cit. 207:

> "There is another reason why plaintiff is not entitled to recover. Having accepted the note and mortgage in the sum of $2,500.00 from the Shlyens in full payment of Hermer's shortages, it ratified his act in cashing the checks in question at the defendant bank. * * * The acceptance of the note and mortgage as unconditional payment distinguishes this case from Strong v. Missouri-Lincoln Trust Co.

(Mo.App.) 263 S.W. 1038, cited by plaintiff."

The note and mortgage having been accepted by plaintiff as unconditional payment, the court held that plaintiff was not entitled to recover from the defendant bank. To permit plaintiff to recover from the bank would have approved a dual recovery by plaintiff. As the court's opinion shows, this case was distinguished from the case of Strong v. Missouri-Lincoln Trust Company, supra, on which Aetna relies.

In the case of Weaver v. Detroit Bank, 330 Mich. 366, 47 N.W.2d 650, relied on by the Trust Company, plaintiff had sued the forger, the principal wrongdoer, and after judgment recovered from the wrongdoer in a garnishment proceeding approximately one-half of the sum due. The court did hold that plaintiff had made an election between inconsistent remedies and, therefore, could not recover from the defendant bank. This case does support the Trust Company's position, but the facts are not analogous to the instant case in that no action was taken by International or Aetna against Herman.

The case of Hensley-Johnson Motors v. Citizens Nat. Bank of Bellflower, 122 Cal. App.2d 22, 264 P.2d 973, cited by the Trust Company, is factually similar to the aforesaid Weaver case, except that it appears the defendant bank was the depository of plaintiff's funds against which funds the checks in question were drawn.

The Trust Company relies on the case of Meyers v. Bank of America Nat. Trust and Savings Ass'n et al., 11 Cal.2d 92, 77 P.2d 1084. This case does not discuss the election of remedies rule. However, the case does hold that, as between the bank which collected the checks bearing the forged endorsements from the drawee banks and the surety company which paid the loss to the employer, the bank should not stand the loss. This holding was bottomed on the finding by the court that the bank was not a wrongdoer in the cashing of the checks,

the genuineness of which it had no reason to doubt.

Another case relied on by the Trust Company is United States Fidelity & Guaranty Co. v. First National Bank in Dallas, Texas, 5 Cir., 172 F.2d 258. This case presented the same factual situation as that in the case of United States Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co., supra, relied on by the Trust Company.

In the First National Bank case the defendant bank was the depository of the employer and in discussing the election of remedies rule the court pointed out that the employer had open to it two remedies based on alternative rights. It then held that the election of the employer, the Pipe Line Company, to pursue to a successful conclusion its right against the Bonding Company estopped it from asserting any claim against the defendant bank. However, in a separate opinion, in which one of the judges concurred in part and dissented in part, he said that:

"Even though the rule still persisted against the filing of inconsistent remedies, and even if the Pipe Line Company could not have in one suit ratified the transaction as valid and in another suit claimed that the same transaction was fraudulent, we have no such situation in the present case. At all times the Pipe Line Company, as well as its subrogee and assignee, the bonding Company, have contended that the endorsements were forged and fraudulent. A proceeding seeking to compel an attorney to disgorge embezzled funds is not inconsistent with holding a bank upon a forged endorsement. Rosacker v. Commercial State Bank, 191 Minn. 553, 254 N.W. 824, 94 A.L.R. 551. * * * There has never been any contention that Beall was without authority to draw checks. The contention is, and always has been, that he had no authority to forge endorsements, and that the bank 'wrongfully charged' the amounts thereof to the account of the

Pipe Line Company." 172 F.2d loc. cit. 266.

The effect of this statement is to hold that an attempt by an employer to collect from the dishonest employee is not inconsistent with holding the collecting bank which cashed the checks having forged endorsements. Of course, in the instant case, no attempt was ever made to collect from Herman, the offending employee.

■ We conclude that International did not make an election between inconsistent remedies and, therefore, Aetna was not precluded under the election of remedies rule from bringing this action. Had there been no indemnity bond and, therefore, no assignment, without a doubt International could have sued the Trust Company and recovered. The instant action accomplishes the same recovery. Aetna merely succeeded to the right held by its assignor. Whatever liability the Trust Company had for the wrongful conversion of the checks continued after the payment of the loss to International by Aetna. International simply assigned its cause of action to Aetna and in doing so we can see no ratification of the Trust Company's act in paying the proceeds of the checks to Herman. There could be no ratification by International of Herman's act in forging the endorsement on the checks or of the wrongful act of the Trust Company in cashing said checks, in accepting payment of its loss under an indemnity contract it had with Aetna. We think the liability of both Herman and the Trust Company remained the same. The assignment gave to Aetna whatever right International had to enforce the aforesaid liability. Kansas City Casualty Co. v. Westport Ave. Bank, supra; Fidelity & Deposit Company of Maryland v. Fort Worth National Bank, supra; Rosacker v. Commercial State Bank, supra; First National Bank of Atlanta v. American Surety Co., supra.

In further support of our conclusion we cite the case of First National Bank of Kansas City v. Produce Exchange Bank of Kansas City, 338 Mo. 91, 89 S.W.2d 33. In that case three cashier's checks were issued by plaintiff and paid by it to the defendant. The endorsement of the payee's name had been forged on said checks and defendant bank cashed same and presented them to plaintiff and plaintiff, relying upon the endorsements by defendant and its guaranty of the validity and genuineness of prior signatures, paid said checks. The pleadings and evidence showed that Lloyds of London had reimbursed plaintiff for its loss. Defendant urged that plaintiff could not recover because it had suffered no loss inasmuch as plaintiff had been reimbursed and in this connection contended that plaintiff was not the real party in interest having no pecuniary right in the matter. This claim of defendant was sustained in the trial court and plaintiff's motion to set aside the involuntary non-suit was denied. Plaintiff appealed and the trial court's action was upheld in the Kansas City Court of Appeals (see 227 Mo.App. 908, 59 S.W.2d 81). The Kansas City Court of Appeals certified the cause to the Supreme Court. The Supreme Court held that the trial court erred in overruling plaintiff's motion to set aside the involuntary non-suit. The effect of the ruling was to hold that plaintiff bank had the right to proceed against the defendant bank even though plaintiff had received reimbursement for its loss from an insurance company.

The trial court found that Aetna's right to recover from the Trust Company was based upon and limited by the equitable doctrine of subrogation. Thus finding, it held that the burden was upon Aetna to show that its equities were superior to those of the Trust Company. Based on this finding and holding, it further found that there was no allegation or proof of neglect or wrongdoing on the part of the Trust Company and that the only inference permissible upon the record was that the Trust Company cashed the checks in the due course of business, without any knowledge the transactions in question were other than legitimate. The trial court, in so finding and holding,

adopted the theory suggested by the Trust Company that the case was one based on money had and received, and that inasmuch as the Trust Company had no actual knowledge of the wrongdoing of the employee in forging the endorsements on the checks in question, it was in no way implicated in the wrong that was done because the checks were cashed in the ordinary course of business. The Trust Company, therefore, suggests that if there is no evidence that the bank knew of or participated in the employee's wrongdoing, that no superior equity exists in favor of a compensated surety which pays the employer's loss and the surety cannot recover the loss from the Trust Company.

We have heretofore pointed out that there is but one form of action, § 506.040 RSMo 1959, V.A.M.S., and that the allegations of the petition and the proof showed facts which constituted a conversion of the checks by the Trust Company. In further support of our holding that the conversion of the checks made the Trust Company a wrongdoer, we refer to some Missouri cases.

Brede Decorating, Inc. v. Jefferson Bank & Trust Co., supra, is a case based on the conversion of sixteen checks deposited in an account not belonging to the payee. The Supreme Court rejected the "minority" rule asserted by the defendant bank to the effect that the Missouri cases do not recognize the necessity of inquiry under the circumstances present. In rejecting the minority rule, the court said that under the circumstances of the case under review the defendant bank was not released from the necessity of inquiry, pointing out, "the fact that a diversion of corporate funds to a private account is, on its face, a highly suspicious circumstance, and that the authority to do this should be clear. The following cases constitute authority to the effect that the bank was put on inquiry." 345 S.W.2d loc. cit. 162. Among the cases cited by the court was Kansas City Casualty Co. v. Wesport Ave. Bank, supra.

Kansas City Casualty Co. v. Wesport Ave. Bank, supra, is a case identical in all respects to the instant case in which the court had no more evidence than is present in this case. The court said the action was ex delicto in nature and that the collecting bank in cashing the checks "wrongfully intermeddled with them to the exclusion and in disregard of the rights of the true owners, and that is a conversion. A conversion is 'any distinct act of dominion wrongfully exerted over one's property * * *.' 2 Cooley on Torts 859." 177 S.W. loc. cit. 1093.

While it is true that the case of Strong v. Missouri-Lincoln Trust Company, supra, was denominated one for money had and received, and the court found that the relationship of the parties was that of depositor and banker, nevertheless, the court said that the Trust Company made no inquiry as to the employee's right to endorse checks of his employer. The court further said that during the time the defendant bank cashed the checks, "the office or place of business of the National Druggist (employer) was in the Century Building, two blocks distant from the trust company, a fact that could have been ascertained from various public sources and its own records." 263 S.W. loc. cit. 1041. The court further pointed out that the defendant bank failed in any manner to communicate with the plaintiff when it received checks for collection payable to plaintiff with his name forged thereto. In these statements the court inferentially held that the bank failed to exercise diligence in determining the genuineness of the endorsements, which failure, in our opinion, makes the collecting bank guilty of a violation of a duty it owed to the payee of the checks.

The case of Universal Carloading and Distributing Co. v. South Side Bank, supra, presents practically the same facts we find in the instant case. In the Universal Carloading case the court found that the action was one for money had and received. In its opinion the court said: "The case with which we are dealing calls only for

the rule applicable to the wrong of an intervening bank." 27 S.W.2d loc. cit. 771. The court in discussing whether or not there had been a ratification of the collecting bank's action and a release of the drawer of the check and the drawee bank by an affirmance of the payment made by them to the collecting bank, said:

"Such ratification and affirmance is no aid to a *wrongful* intervener. This reason appears to have weight and wide recognition, but in our judgment can well be supplemented by another of equal or greater force, to wit, the *breach of duty* which the intervening bank owes to the owner of the check to ascertain the verity of the indorsement. Defendant bank in this case had first contact with the forger and false holder. Checks payable to plaintiff were presented for collection and deposited in the personal account of the forger. There is no evidence of any effort or inquiry of any character to verify the indorsements and ascertain the interest, if any, of the named payee. * * * Inaction in such a situation is inexcusable. It was the duty of the bank to see that the proceeds of the checks reached the true owner. The neglect of the bank was the proximate cause of plaintiff's loss." 27 S.W.2d loc. cit. 771—emphases ours.

The court then said that the principles announced found support in the case of Kansas City Casualty Co. v. Wesport Ave. Bank, supra.

■ In all of the aforesaid Missouri cases language was used which held the defendant bank a wrongdoer, where it cashed checks bearing forged endorsements. It is the duty of a bank to exercise diligence in ascertaining the genuineness of all signatures and the identity of its customers.

The Trust Company asserts that Aetna's rights are measured by the rules relating to equitable or legal subrogation. It is the position of the Trust Company that Aetna's

recovery is dependent on a right in equity and not by virtue of an asserted right under an assignment. Therefore, it insists that the assignment to Aetna of International's cause of action against the Trust Company cannot assist Aetna. In support of its contention it cites American Surety Company v. Bank of California, supra, and Meyers v. Bank of America, supra.

■ We do not agree that Aetna's right to recovery is measured by the rules relating to equitable subrogation, but think that Aetna may base its right to recover under conventional subrogation. Conventional subrogation differs from equitable subrogation in that conventional subrogation stands on a contract. Loewenstein v. Queen Insurance Company et al., 227 Mo. 100, 127 S.W. 72.

In the case of Royal Indemnity Company v. Poplar Bluff Trust Company et al., 223 Mo.App. 908, 20 S.W.2d 971, plaintiff under a policy of indemnity paid its insured, the Union Central Life Insurance Company, the amount of the loss on account of a forgery. An assignment by the Union Central Life Insurance Company of its claim against the Poplar Bluff Trust Company was made to the plaintiff and in that connection the court said: "since the written assignment of the interest of the Union Central Life Insurance Company had been made to the plaintiff, we must hold that the plaintiff was properly subrogated to the rights of the Union Central Life Insurance Company." 20 S.W.2d loc. cit. 974. The court affirmed a judgment in favor of the plaintiff against the defendant bank.

To the same effect, see Home Indemnity Company of New York v. State Bank of Fort Dodge, 233 Iowa 103, 8 N.W.2d 757, where the court held that the liability of the defendant bank continued after the payment of the indemnity to the insured, holding that "the thing assigned was a cause of action for money had and received, or for conversion" (8 N.W.2d loc. cit. 769) at the election of the surety company.

As we pointed out heretofore, the dissenting opinion in the case of United States Fidelity and Guaranty Co. v. First National Bank in Dallas, Texas, supra, held that an assignment contemplated the continued existence of the debt or claim assigned and that to hold otherwise would render invalid every assignment where the consideration was the payment of an antecedent obligation.

The case of First National Bank of Atlanta v. American Surety Co., supra, is similar in all respects to the instant case. There the court held that the plaintiffs had an assignment which amounts to conventional subrogation and that they did not have the burden of showing the superior equity as against the defendant in order to recover. In support of its holding the Georgia court cited the case of McKenzie v. Missouri Stables, 225 Mo.App. 64, 34 S. W.2d 136, wherein this court noted the difference between equitable subrogation and conventional subrogation, holding that conventional subrogation depends upon the existence of a lawful contract, and arises by act of the parties.

 It is our opinion that Aetna did not have the burden of showing superior equities in order to recover. However, if we assume, without so holding, that Aetna is limited to recovery only if the equities are in its favor, nevertheless, we feel that the trial court erred in failing to find the equities in favor of Aetna. The Trust Company, a converter of International's checks, can claim no equities superior to Aetna. Aetna, free of any fault, certainly had a superior position in equity to the Trust Company which failed to exercise the diligence required of it, and as the Missouri cases hold, was put on inquiry, wrongfully intermeddled with International's checks, became a wrongful intervenor and its action was the proximate cause of the loss.

As said in Brede Decorating, Inc., v. Jefferson Bank & Trust Company, supra, "Many cases of this general nature have been sustained as actions for conversion, while others have been sustained as actions for money had and received." 345 S.W.2d loc. cit. 159. As we said earlier, it makes little difference whether the case be determined one for conversion or for money had and received. Recovery under the circumstances of this case has been sustained in both forms of action. Not to permit recovery would give primacy to form rather than substance.

 As we have said, the trial court found that the Trust Company was in no way implicated in the wrong that was done and that it cashed the checks in the ordinary course of business without any knowledge the transactions in question were other than legitimate. We think we have shown that the Trust Company was implicated in a wrong. If the trial court, in so holding, based its finding on the belief that Herman had apparent authority to endorse and cash the checks, because he had occasionally represented that he was vice-president and general manager of International, it was in error. This is true because the record fails to disclose that the facts upon which the apparent authority is alleged to exist were known to the Trust Company at the time of the transactions. 2 C.J.S. Agency § 107, p. 1272; Burnham v. Wilson et al., 207 Mass. 378, 93 N.E. 704; Lyles-Black Co. v. Alldredge, 10 Ala.App. 632, 65 So. 696. There is nothing in the record to show that the Trust Company relied on the apparent authority of Herman or that it was misled by the occasional representations that he was a vice-president and general manager or that it was influenced thereby. Brede Decorating, Inc., v. Jefferson Bank & Trust Co., supra; Thornhill v. Masucci, 202 Mo.App. 357, 216 S.W. 819.

Finally, the trial court found that "prior to the time when Herman cashed the three checks described in the petition, International had knowledge of dishonest conduct on his part sufficient to constitute a warning that, if he were retained as an employee, other similar conduct on his part could reasonably be contemplated."

It has been held that negligence of the payee, as in respect of the employment and supervision of an untrustworthy employee guilty of a forgery is no defense to an action against the bank for collecting forged paper. 9 C.J.S. Banks and Banking § 254, p. 528; Plymouth Collateral Co. v. First Nat. Bank of Seattle et al., 188 Wash. 344, 62 P.2d 734; California Stucco Co. of Washington v. Marine Nat. Bank, 148 Wash. 341, 268 P. 891, 67 A.L.R. 1531.

■ As we have pointed out heretofore, there was no apparent authority because there was no showing in the record that the Trust Company had any knowledge or relied on any facts which would lead it to believe that Herman had apparent authority to cash the checks in question. In addition, there is no showing of negligence on the part of International in the employment of Herman. The fact that Herman received payment for a garbage disposer and retained receipts therefor for a period of one week is not a showing of dishonesty on the part of Herman, sufficient to put International on guard in connection with his forged endorsements of its checks. As pointed out by Aetna, the check received by Herman in payment of the garbage disposer was turned over to International and had not been wrongfully endorsed by Herman. Also, the evidence that Herman at one time purchased tires and charged them to either the account of International or Export Packing Company does not show any dishonesty on the part of Herman, there being no evidence to show that Herman charged these tires to this account with a wrongful intent. At least these acts are not such as to constitute notice to International that Herman would wrongfully forge its name on checks in which it was payee.

In addition to the cases discussed herein cited by the Trust Company, we have examined many other cases cited by it. A discussion of those cases would only serve to reiterate the principles and holdings announced in the cases we have discussed.

In view of what we have said, we find that the trial court erred in its findings for the reasons we have given, and further find that its judgment is clearly erroneous. Therefore, the judgment of the trial court is reversed and the cause is remanded with directions to enter a judgment in favor of plaintiff, Aetna Casualty and Surety Company, a corporation, in the amount of $1247.92, representing the total face value of the three checks, together with interest thereon from April 17, 1956.

ANDERSON, P. J., and WOLFE, J., concur.